UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CARLOS LEONEL CRUZ,

                    Plaintiff,

v.                                                      3:18-CV-0048
                                                        (GTS/ML)
UNITED AUTOMOBILE WORKERS UNION
LOCAL 2300; TOMPKINS CONSOLIDATED
AREA TRANSIT, INC.; JASON DAVID, President,
UAW Local 2300; DOES 2-10; and FRANK
HOWELLS, Union Representative, UWA Local 2300,

                    Defendants.
_____

APPEARANCES:                                            OF COUNSEL:

TECHNOLOGY LAW GROUP, LLC                                NEIL S. ENDE, ESQ.
    Counsel for Plaintiff
5335 Wisconsin Avenue, NW, Suite 440
Washington, DC 20015

OFFICE OF ROBERT G. WELLS                                ROBERT G. WELLS, ESQ.
    Co-Counsel for Plaintiff
120 East Washington Street
825 University Building
Syracuse, NY 13202

BLITMAN & KING, LLP                                      KENNETH L. WAGNER, ESQ.
    Counsel for Defendants UAW Local 2300 and David
443 North Franklin Street, Suite 300
Syracuse, NY 13204-1415

HANCOCK ESTABROOK, LLP                                   JOHN T. McCANN, ESQ.
    Counsel for Defendant TCAT                           EMILY MIDDLEBROOK, ESQ.
100 Madison Street, Suite 1500
Syracuse, NY 13202

GLENN T. SUDDABY, Chief United States District Judge

# DECISION and ORDER

Currently before the Court, in this labor rights action filed by Carlos Leonel Cruz ("Plaintiff") against the United Automobile Workers Union Local 2300, Jason David, and Frank Howells, ("Union Defendants"), Tompkins Consolidated Area Transit ("TCAT"), and Does 2-10, are the following four motions: (1) the Union Defendants' partial motion to dismiss, or, in the alternative, for summary judgment; (2) Defendant TCAT's partial motion to dismiss, or, in the alternative, for summary judgment; (3) Plaintiff's motion in limine to exclude certain evidence; and (4) Plaintiff's motion to amend the Amended Complaint. (Dkt. Nos. 51, 53, 55, 67.)[1] For the reasons set forth below, the Union Defendants' motion is granted, Defendant TCAT's motion is granted, Plaintiff's motion in limine is denied, and Plaintiff's motion to amend is denied.

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Amended Complaint

Generally, in his Amended Complaint, Plaintiff asserts ten causes of action. (Dkt. No. 45 [Pl.'s Am. Compl.].) First, Plaintiff claims that Defendant UAW Local 2300 breached its duty of fair representation under the National Labor Relations Act ("NLRA"). (*Id.* at ¶¶ 50-61.) More specifically, Plaintiff alleges that Defendant UAW Local 2300's refusal to pursue his grievance against Defendant TCAT was (a) arbitrary and indefensible in that it was not the byproduct of a proper application of the terms of the Collective Bargaining Agreement ("CBA"), union procedures, or a consideration of the facts, (b) made in bad faith and with discriminatory animus based on Plaintiff's race and/or ethnic origin, and (c) reckless, irrational, outrageous,

---

[1]    Although Plaintiff's "motion to amend" is actually a cross-motion under Local Rule 7.1(c) of the Court's Local Rules of Practice because it competes with the relief requested by Defendants, the Court will continue to refer to it as a motion for reasons of expediency.

willful, and malicious.  (*Id.*)

Second, Plaintiff claims that Defendant TCAT breached the CBA in violation of Section 301 of the Labor Management Relations Act ("LMRA").  (*Id.* at ¶¶ 62-70.)  More specifically, Plaintiff alleges that, when choosing to terminate Plaintiff's employment, Defendant TCAT failed to undertake a process of progressive discipline, including warnings and advanced notice, as required by the CBA .  (*Id.*)

Third, Plaintiff claims that Defendants UAW Local 2300, David, and TCAT engaged in tortious intentional infliction of emotional distress by engaging a pattern of extreme and outrageous conduct including (a) failing and refusing to act in a forthright and honest manner, (b) misleading Plaintiff into believing he would be rehired, (c) terminating him on the basis of wrongdoing despite soliciting testimony from him to establish an absence of wrongdoing, (d) publishing a termination notice that falsely accused him of wrongdoing, (e) terminating him on short notice during the holiday season, (f) promising him they would pursue his grievance, and (g) physically threatening, intimidating, and being openly hostile to Plaintiff.  (*Id.* at ¶¶ 71-78.)

Fourth, Plaintiff claims that the Union Defendants and Defendant TCAT engaged in tortious negligent infliction of emotional distress based on essentially the same conduct described with relation to his claim for intentional infliction of emotional distress.  (*Id.* at ¶¶ 79-84.)

Fifth, Plaintiff claims that Defendants TCAT and Does 2-10 engaged in defamation or defamation per se by publishing to numerous third parties the false statement that the accident that resulted in Plaintiff's termination was "preventable based on failure to observe Ms. Stedwell in the crosswalk."  (*Id.* at ¶¶ 85-98.)

Sixth, Plaintiff claims that Defendants UAW Local 2300 and David engaged in

intentional misrepresentation, fraud, and civil conspiracy by providing false or misleading statements to Plaintiff, including repeated promises to pursue his grievance if a settlement was not reached and failing to advise him of exhaustion requirements contained in the UAW Constitution.  (*Id.* at ¶¶ 99-117.)

Seventh, Plaintiff claims that the Union Defendants engaged in negligent misrepresentation and civil conspiracy based on the same statements and omissions underlying his claim for intentional misrepresentation.  (*Id.* at ¶¶ 118-37.)

Eighth, Plaintiff claims that the Union Defendants engaged in fraud by concealment by withholding critical information from Plaintiff about his rights and obligations under the CBA and the UAW Constitution, including his need to exhaust his remedies with the union before commencing legal action.  (*Id.* at ¶¶ 138-54.)

Ninth, Plaintiff claims that Defendant UAW Local 2300 breached its equitable duty to represent Plaintiff by withholding critical information regarding his rights and obligations under the CBA and the UAW Constitution, including his need to exhaust his remedies under the Union agreements before commencing legal action.  (*Id.* at ¶¶ 155-61.)  More specifically, Plaintiff claims that it would be inequitable to allow Defendant Local 2300 to enforce any provision that requires exhaustion of remedies where it failed to disclose such requirement to Plaintiff, and that the commencement date for exhaustion should be tolled to allow Plaintiff to exhaust his remedies.  (*Id.*)

Tenth, Plaintiff claims that Defendant UAW Local 2300 should be estopped from enforcing any provision of the UAW Constitution that requires exhaustion of remedies because the Union Defendants breached their duty to give truthful information and accurate advice when

they "repeatedly made express and unqualified promises" that they would pursue a grievance. (*Id.* at ¶¶ 162-72.) As with his equitable estoppel claim, Plaintiff claims that the commencement date for exhausting his remedies should be tolled based on this breach. (*Id.* at ¶ 169.)

### B. Undisputed Material Facts on the Union Defendants' Motion

Plaintiff failed to submit a response to the Union Defendants' Statement of Material Facts as required by Local Rule 7.1(a)(3) and therefore the facts asserted in that Statement of Material Facts have all been deemed admitted to the extent they are supported by evidence. *See* N.D.N.Y. L.R. 7.1(a)(3) ("The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in a short and concise statements, in matching numbered paragraphs. . . . The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert.")

1. Defendant Local 2300 represents a bargaining unit of approximately 85 bus operators, bus handlers, and mechanics employed by Defendant TCAT and it has approximately 1,200 members in total.

2. Defendant Local 2300 and Defendant TCAT have been parties to a series of collective bargaining agreements that cover the wages, hours, and other terms and conditions of employment of bargaining unit employees; the agreement that was in effect during the relevant events in this litigation was effective for the period from January 1, 2015, to June 30, 2018, and contained a grievance procedure that culminates in final and binding arbitration.

3. Plaintiff was employed as a bus operator by Defendant TCAT from 2010 until his termination from employment on November 16, 2016, and was a member of Defendant Local

2300.

4.     On January 26, 2015, Plaintiff was involved in an accident while driving a TCAT bus, the result of which was that a pedestrian was killed.

5.     Following an investigation, Defendant TCAT terminated Plaintiff's employment, citing its accident review committee's conclusion that the accident was preventable.

6.     Defendant Local 2300 filed a grievance challenging Plaintiff's termination, which was processed in December 2016 and January 2017; a mediator from the Federal Mediation and Conciliation Service assisted the parties in attempting to resolve the grievance and a tentative agreement on the principal terms was reached at the mediation session in January 2017.

7.     A draft written settlement was circulated and revised over the course of several months; Defendants Local 2300 and TCAT agreed to the written terms, but Plaintiff ultimately declined to execute the agreement.

8.     In the absence of Plaintiff's approval of the agreement, Defendant TCAT withdrew its offer and Defendant Local 2300 withdrew its grievance; in July 2017 (before the deadline set by Defendant TCAT for Plaintiff's execution of the agreement), Defendant Local 2300 had advised Plaintiff that it would not submit the grievance to arbitration.

9.     The decision to withdraw (rather than arbitrate) Plaintiff's grievance was made by Defendant Local 2300's executive board; the question of whether to arbitrate his grievance was not put before the membership.

10.    Defendant Local 2300 is an unincorporated association.

11.    Membership in Defendant Local 2300 is voluntary for eligible workers employed by an employer that has a collective bargaining relationship with Defendant Local 2300; under

Defendant Local 2300's by-laws, the executive officers of the Union include its president and financial secretary/treasurer and the executive board is empowered to act on behalf of the membership, but the power resides within the membership of the Union.

12.     Although Defendant Local 2300 is not incorporated, it is affiliated with two building corporations ("Local 2300 Building Corporation" and "UAW Local 2300 Building, Inc."), which were formed because, as an unincorporated association, Defendant Local 2300 cannot own real property; however, neither of these corporations actually owns property, and Defendant Local 2300 continues to lease the premises where its headquarters is located.

### C.     Undisputed Material Facts on Defendant TCAT's Motion

Plaintiff also failed to submit a response to Defendant TCAT's Statement of Material Facts as required by Local Rule 7.1(a)(3) and therefore the facts asserted in that Statement of Material Facts have all been deemed admitted to the extent they are supported by evidence. N.D.N.Y. L.R. 7.1(a)(3).

1.     Plaintiff was employed by Defendant TCAT as a bus operator at all times material to this action until his termination from employment on November 16, 2016.

2.     Plaintiff was issued a termination notice by Defendant TCAT on November 16, 2016, that stated that he was being terminated from employment based on a finding by an accident review committee that the accident on January 26, 2015, in which the bus Plaintiff was operating struck and killed a pedestrian, was preventable.

3.     The terms and conditions of Plaintiff's employment with Defendant TCAT were set forth in the Collective Bargaining Agreement (effective January 1, 2015, to June 30, 2018) between Defendant TCAT and Defendant Local 2300.

4.      Article 5 of the CBA provides that Defendant TCAT reserves the rights "to maintain order and efficiency in all its operations, including the sole right to discipline, suspend, and discharge employees for just cause," and "to make and revise reasonable policies, work rules, rules of conduct, and safety regulations."

5.      Article 27 of the CBA provides that "an employee may be disciplined only for just cause," and also sets forth a procedure for "progressive, corrective discipline," but provides that situations involving major infractions shall be exempted from progressive discipline.

6.      The termination notice issued by Defendant TCAT to Plaintiff on November 16, 2016, stated the following:

> The TCAT Accident Review Committee reviewed all of the facts and made a determination that this accident was preventable based on failure to observe [the pedestrian] in the crosswalk.
>
> In accordance with guidelines from the New York State Department of Transportation and the National Safety Council, a professional bus operator is held to a higher standard than non-professionals and is expected to drive in a defensive manner. Defensive driving means avoiding accidents despite adverse conditions created by roads, weather, traffic, or the errors of other drivers or pedestrians. A preventable accident is defined by the New York State Department of Transportation as one "in which the driver failed to do everything that could reasonably be expected to be done to prevent it."
>
> Based on the determination of the Accident Review Committee and revealing all of the facts and circumstances, TCAT has come to the decision to terminate you employment effective today November 16, 2016.

7.      Article 27 of the CBA provides that Union representation will be present during any meeting that might lead to discipline or during a disciplinary meeting absent waiver by the employee.

8.      Article 37, Section 8 of the CBA provides that information from employee

personnel files should not be made available to anyone outside Defendant TCAT or its representatives, and should be held in the strictest confidence unless the employee grants written permission or Defendant TCAT is required by law or subpoena to disclose the information. Article 37, Section 8 further provides that information from employee personnel files may be provided to the Union upon request for representation purposes.

9. Article 2 of the CBA designated the Union as the sole and exclusive bargaining agent for all bus operators.

10. Defendant Local 2300 was provided with the termination notice at the time it was issued to Plaintiff on November 16, 2016, as indicated by the Union Chairperson's signature.

### D. Parties' Briefing on the Parties' Motions

#### 1. Defendants' Motions

##### a. Union Defendants' Memorandum of Law-in-Chief

Generally, in their memorandum of law, the Union Defendants assert two arguments. (Dkt. No. 51, Attach. 3, at 14-24 [Union Defs.' Mem. of Law].) First, the Union Defendants argue that the rule espoused in *Martin v. Curran*, 303 N.Y. 276 (N.Y. 1951), bars the state law claims asserted against them because (a) the Union is an unincorporated association, and (b) Plaintiff has not alleged facts plausibly suggesting that each and every member of the Union authorized or ratified the alleged wrongful conduct against him. (*Id.* at 14-19.) More specifically, the Union Defendants argue that the Union's bylaws indicate a structure consistent with an unincorporated association, and that the alleged wrongful decision was made by the Union's executive board without the input of the membership; therefore, Plaintiff is unable to state a claim that satisfies the requirements of *Martin*. (*Id.*) The Union Defendants also argue

that, even if federal law no longer recognizes the common law basis for the rule in *Martin*, the requirement for membership ratification remains the law of New York and the Court is required to apply and follow New York law when considering claims pursuant to New York law. (*Id.* at 16-17.)

Second, the Union Defendants argue that, in the alternative, the state law claims are preempted by the duty of fair representation arising under federal law. (*Id.* at 19-24.) More specifically, the Union Defendants argue that the state law claims related to the Union's handling of Plaintiff's grievance (including his allegations that Defendant UAW Local 2300 was dishonest with him in processing, settlement, arbitration, and withdrawal of the grievance and was discriminatorily hostile in its determination not to pursue his grievance to arbitration) "go[] to the heart of a union's obligations under the duty of fair representation." (*Id.*) The Union Defendants argue that these types of claims have routinely been found to be preempted by other courts. (*Id.* at 22-24.)

### b.    Defendant TCAT's Memorandum of Law-in-Chief

Generally, in its memorandum of law, Defendant TCAT argues that Plaintiff's state law claims are preempted by Section 301 of the LMRA. (Dkt. No. 53, at 8-15 [Def. TCAT's Mem. of Law].) More specifically, Defendant TCAT argues that "it is well settled that preemption applies where the plaintiff's state law causes of action require[] a court to consider whether the plaintiff was discharged for just cause in compliance with a [CBA]," and that Plaintiff's claims for intentional infliction of emotional distress, negligent infliction of emotion distress, defamation, and violation of public policy all require interpretation of the CBA. (*Id.*) As to Plaintiff's claims for intentional and negligent infliction of emotional distress, Defendant TCAT

argues that these claims are preempted because both allege a breach of duties that Plaintiff believes were owed to him under the CBA, and that determining whether his termination was consistent with the CBA would require the Court to interpret the CBA. (*Id.* at 10-12.) As to Plaintiff's claim for defamation, Defendant TCAT argues that this claim is preempted because the statement alleged to be defamatory was related to Defendant TCAT's determination that the accident resulting in Plaintiff's termination was preventable, and that determining whether the Defendant TCAT was required to make such a statement as part of its disciplinary duties under the CBA would necessarily require interpretation of the CBA. (*Id.* at 13-14.) As to Plaintiff's public policy claims (i.e., whether Defendants' actions violated New York public policy), Defendant TCAT argues that these claims are preempted because determining whether Defendant TCAT violated public policy would necessarily require interpreting the CBA provisions related to termination for just cause in particular. (*Id.* at 15.)

### c. **Plaintiff's Consolidated Opposition Memorandum of Law**

Generally, in opposition to Defendants' memoranda of law, Plaintiff asserts six arguments. (Dkt. No. 59, at 6-16 [Pl.'s Opp'n Mem. of Law].) First, Plaintiff argues that Defendant UAW Local 2300 has failed to prove that it is a voluntary unincorporated association because the evidence it has provided does not describe it as such or otherwise support that assertion. (*Id.*) In particular, Plaintiff argues that the affidavit from Defendant David does not qualify as sufficient evidence to resolve factual issues on a motion to dismiss under New York law. (*Id.*)

Second, Plaintiff argues that the Union Defendants' motion to dismiss is procedurally defective as an alternative motion for summary judgment because, although they have submitted

other evidence, there has not been sufficient notice to Plaintiff to convert the motion to dismiss to a motion for summary judgment without further reasonable opportunity to present relevant material. (*Id.* at 8.) Plaintiff therefore argues that the motion should be treated as a motion to dismiss. (*Id.*)

Third, Plaintiff argues that, even if the Court should allow conversion of the motion to dismiss to a motion for summary judgment, such motion would need to be denied because there are genuine disputes of material fact as to the relevant issues. (*Id.* at 8-10.)

Fourth, Plaintiff argues that Defendants have not met the "heavy burden" to justify dismissal of Plaintiff's state law claims. (*Id.* at 10-13.) More specifically, Plaintiff argues that, under New York law, the president or treasurer of an unincorporated association can be sued for any claim where the plaintiff would be able to maintain an action against all associated persons (i.e., Union members) and that, because the Union Constitution indicates that Union members have power over all Union decisions, it can be inferred that the Union members all passively approved of the Union Defendants' actions relating to Plaintiff, thereby satisfying the *Martin* rule. (*Id.* at 11.) Plaintiff additionally argues that this case should be distinguished from other cases applying *Martin* because here it is actually impossible to show ratification by all Union members given that Plaintiff himself is a Union member and could not have ratified the action against himself. (*Id.* at 12-13.) Plaintiff also argues that the *Martin* rule violates his right to petition under the First Amendment and his due process rights under the Fourteenth Amendment. (*Id.* at 13.)

Fifth, Plaintiff argues that his state law claims are not preempted by federal law. (*Id.* at 13-15.) More specifically, as to his claims for intentional and negligent infliction of emotional

distress, Plaintiff argues that numerous forms of the Union Defendants' threatening conduct (including their physically threatening him, exhibiting an openly hostile attitude, shouting threats, and making a Facebook post) fall outside of the scope of the obligations in the CBA. (*Id.* at 14.) As to his defamation claim, Plaintiff argues that the CBA does not address either parties' right and/or liability as to making false statements, and that the determination of whether Defendant TCAT's allegedly defamatory statement was false is beyond the scope of the CBA. (*Id.* at 14-15.)

Sixth, Plaintiff argues that, as a matter of policy, the *Martin* rule should be rejected because it "has been widely denounced and rejected as prevailing law." (*Id.* at 15-16.)

### d. Union Defendants' Reply Memorandum of Law

Generally, in reply to Plaintiff's opposition memorandum of law, the Union Defendants assert three arguments. (Dkt. No. 65, at 5-14 [Union Defs.' Reply Mem. of Law].) First, the Union Defendants argue that, as to Plaintiff's argument regarding conversion of their motion to one for summary judgment, he has been given sufficient notice and opportunity to present his own evidence and has failed to comply with Fed. R. Civ. P. 56(d) to show what further discovery he requires to answer the motion. (*Id.* at 5-10.) The Union Defendants also argue that Plaintiff's failure to submit a response to their statement of material facts renders those facts admitted, and that Plaintiff's citation to his unverified Amended Complaint in an effort to establish a genuine dispute of material facts does not satisfy the requirements of Local Rule 7.1. (*Id.*)

Second, the Union Defendants argue that Plaintiff has not alleged facts plausibly suggesting that he can satisfy the requirements of *Martin*. (*Id.* at 10-13.) More specifically, the Union Defendants argue that (a) N.Y. Gen. Ass'ns L. § 13 does not allow Plaintiff to skirt *Martin*

because approval is still required from all members even if he has chosen to sue a representative of the Union as opposed to all the individual members, (b) there is no evidence that the members knew or approved of the conduct to support Plaintiff's theory of passive approval, (c) case law refutes Plaintiff's argument that the alleged impossibility of compliance based on his own Union membership is grounds for not applying *Martin*, (d) Plaintiff's constitutional challenges are not supported by any allegation of state action, and (e) Plaintiff's policy challenge to *Martin* is unpersuasive because courts have continued to uphold it as a valid statement of New York law. (*Id.*)

Third, the Union Defendants argue that Plaintiff has failed to show that preemption does not apply to his state law claims because all of the relevant conduct directed at him occurred in direct connection with the Union's representation of him related to his grievance, and, in any event, is not conduct that is extreme and outrageous. (*Id.* at 13-14.) The Union Defendants also argue that Plaintiff's failure to address preemption as to some of the claims lightens the Union Defendants' burden, which they have met. (*Id.*)

### e.    Defendant TCAT's Reply Memorandum of Law

Generally, in reply to Plaintiff's opposition memorandum of law, Defendant TCAT asserts three arguments. (Dkt. No. 62, at 6-10 [Def. TCAT's Reply Mem. of Law].) First, Defendant TCAT argues that Plaintiff has failed to comply with Local Rule 7.1 of the Court's Local Rules of Practice by failing to provide a responsive Statement of Material Facts. (*Id.* at 6.)

Second, Defendant TCAT argues that Plaintiff has conceded the application of preemption to his claims for negligent and intentional infliction of emotional distress and violation of public policy because he has not sufficiently opposed those arguments, and that

Defendant TCAT has shown that there is facial merit to its arguments seeking dismissal of these claims. (*Id.* at 6-9.)

Third, Defendant TCAT argues that Plaintiff's defamation claim is also preempted because the allegedly false statement was part of a determination under the CBA related to whether discipline was warranted, and Plaintiff has not cited any legal authority in opposition on this point. (*Id.* at 9-10.)

### 2.    Plaintiff's Motion in Limine

### a.    Plaintiff's Memorandum of Law-in-Chief

Generally, in his memorandum of law, Plaintiff asserts two arguments. (Dkt. No. 55, at 4-7 [Pl.'s Mem. of Law].) First, Plaintiff argues that Defendant TCAT should be barred from introducing any evidence that, as to the accident that resulted in Plaintiff's termination of employment, Plaintiff was negligent or that the accident was preventable. (*Id.* at 4-6.) More specifically, Plaintiff argues that Defendant TCAT's admissions that there was no negligence in a wrongful death action related to that accident should preclude it from asserting an alternative position in this case given that both cases arise from the same accident. (*Id.*) Plaintiff alternatively argues that, even if the Court does not accept this argument, Defendant TCAT failed to respond to Plaintiff's first request for admissions and is therefore deemed to have admitted such things. (*Id.* at 6.)

Second, Plaintiff argues that Defendants should be barred from asserting defenses based on the premise that his termination was lawful because, if Defendants are barred from presenting the above evidence regarding negligence, the Court must find that the termination was unlawful. (*Id.* at 7.)

### b. Union Defendants' Opposition Memorandum of Law

Generally, in opposition to Plaintiff's memorandum of law, the Union Defendants assert three arguments.  (Dkt. No. 56, at 4-12 [Union Defs.' Opp'n Mem. of Law].)  First, the Union Defendants argue that Plaintiff's motion violates N.D.N.Y. L.R. 7.1 by consisting of a single paper rather than the required notice of motion, memorandum of law, supporting affidavit and proof of service.  (*Id.* at 4.)

Second, the Union Defendants argue that Defendant TCAT's denials of negligence in the wrongful death action are not judicial admissions and are not controlling in this action because (a) Defendant TCAT's denials of negligence are denials of a legal conclusion, not denials of fact, and therefore do not constitute a judicial admission, (b) averments made in pleadings in a different action are not binding on a subsequent action as a matter of law, and (c) there nonetheless is no inconsistency between Defendant TCAT's assertions in both cases because employers are permitted to impose a higher duty of care on employees than is imposed by tort law, and therefore Defendant TCAT's assertion that Plaintiff was not negligent under the tort standard does not conflict with its assertion that Plaintiff did not meet his duty of care as a professional driver employed by TCAT.  (*Id.* at 6-10.)

Third, the Union Defendants argue that Defendant TCAT has not defaulted in connection with Plaintiff's first request for admissions because Plaintiff failed to serve that request consistent with the requirements of Fed. R. Civ. P. 5 in that he attempted to serve the request by email despite the fact that Defendant TCAT's attorney never consented to service by email as required by that rule.  (*Id.* at 11-12.)

### c. Defendant TCAT's Opposition Memorandum of Law

Generally, in opposition to Plaintiff's memorandum of law, Defendant TCAT asserts three arguments. (Dkt. No. 58, at 7-11 [Def. TCAT's Opp'n Mem. of Law].) First, Defendant TCAT argues that Plaintiff's motion must be denied as premature because the parties have not had an opportunity to respond to discovery requests or to conduct depositions, and it is therefore not clear what evidence would be excluded. (*Id.* at 7-8.)

Second, Defendant TCAT argues that its positions in the wrongful death action and this action are not inconsistent because employers are permitted to impose a higher standard of care through internal policies than the standard of care imposed by traditional tort principles. (*Id.* at 8-10.)

Third, Defendant TCAT argues that it has not admitted anything as a result of Plaintiff's first request for admissions because that request was not properly served pursuant to Fed. R. Civ. P. 5 based on the fact that Defendant TCAT has never consented to service by email and Plaintiff has not attempted to re-serve the request by proper means. (*Id.* at 10-11.)

### 3. Plaintiff's Motion to Amend His Amended Complaint

### a. Plaintiff's Memorandum of Law-in-Chief

Generally, in his memorandum of law, Plaintiff asserts four arguments. (Dkt. No. 67, at 8-13 [Pl.'s Mem. of Law].) First, Plaintiff argues that the amendment is timely and will not cause undue delay. (*Id.* at 8-9.) More specifically, Plaintiff argues that (a) he did not learn of the need to add Does 11-1600 (the members of UAW Local 2300) until receiving the affidavit of Defendant David with the Union Defendants' motion to dismiss, (b) no additional substantive changes are being made, (c) discovery is still open for six months, so there will be no need to

extend discovery for the new defendants, and (d) there is no other reason to believe that there will be any delay or that any delay will cause prejudice. (*Id.*)

Second, Plaintiff argues that there will be no prejudice to Defendants because the addition of these other defendants is consistent with Fed. R. Civ. P. 21 and there is still significant time to conduct discovery. (*Id.* at 9-11.)

Third, Plaintiff argues that there is no evidence of bad faith in his request to amend because he is merely adding prerequisite Defendants and information in order to establish his right to pursue his claims. (*Id.* at 11.)

Fourth, Plaintiff argues that the amendments are meritorious and not futile because (a) the addition of the Doe defendants addresses Defendants' *Martin* concerns, and (b) the additional factual allegations related to the Union Constitution's bylaws plausibly allege that the membership should be deemed to have passively approved the decisions of the Union's executive board. (*Id.* at 11-13.)

### b.   Union Defendants' Opposition Memorandum of Law

Generally, in opposition to Plaintiff's memorandum of law, the Union Defendants assert three arguments. (Dkt. No. 69, at 9-19 [Union Defs.' Opp'n Mem. of Law].) First, the Union Defendants argue that Plaintiff's motion to amend is untimely and unsupported by a showing of good cause for the delay. (*Id.* at 9-12.) More specifically, the Union Defendants argue that Plaintiff filed the motion to amend beyond the time allowed in the Scheduling Order despite having known about the facts underlying his proposed amendments since the time that Defendants first raised *Martin* as a basis for dismissal in their opposition to Plaintiff's proposed First Amended Complaint. (*Id.* at 10.) The Union Defendants also argue that there was only four

months (not six months) of discovery left at the time Plaintiff filed his motion and that adding the Doe defendants would cause considerable delay because each of them would need to be served, to respond, and to participate in discovery. (*Id.* at 11-12.)

Second, the Union Defendants argue that Plaintiff's request to add the 1,200 individual Union members is both superfluous and barred by New York law. (*Id.* at 12-16.) More specifically, the Union Defendants argue that N.Y. Gen. Ass'ns L. § 13 allows suit against a union representative rather than all the members and that Plaintiff's initial decision to name Defendant David is "substantially no different from naming individually all the members of Local 2300"; therefore, the Union Defendants argue that allowing the addition of the individual members is redundant. (*Id.* at 13-14.) The Union Defendants also argue that nothing in N.Y. Gen. Ass'ns L. § 13 negates Plaintiff's burden to show that all the members approved of the Union's actions, whether or not those members are joined individually in this action. (*Id.*) The Union Defendants additionally argue that N.Y. Gen. Ass'ns L. § 16 bans Plaintiff from asserting claims against the members of an unincorporated association while the same claims are pending against the association's representatives; rather, they argue, a claim against the members can be brought only after Plaintiff obtains a judgment against the officers or representatives of the association and such judgment has been returned unsatisfied or unexecuted. (*Id.* at 14-15.)

Third, the Union Defendants argue that the proposed amendments fail to allege unanimous authorization or ratification by Defendant UAW Local 2300's membership and therefore fails to state a claim upon which relief can be granted as to the state claims. (*Id.* at 16-19.) More specifically, the Union Defendants argue that no case law supports Plaintiff's reading of dicta in a case from the New York Supreme Court that an inference of "passive" authorization

will suffice; rather, the Union Defendants argue that *Martin* specifically states that authorization can only be imputed to members who, with full knowledge, expressly or implicitly ratified the allegedly wrongful act.  (*Id.* at 17-19.)

### c.      Defendant TCAT's Opposition Memorandum of Law

Generally, in opposition to Plaintiff's memorandum of law, Defendant TCAT argues that the proposed amendments as to Does 2-10 should be rejected as futile, untimely, and lacking good cause.  (Dkt. No. 71, at 7-13 [Def. TCAT's Opp'n Mem. of Law].)  More specifically, Defendant TCAT argues that (a) the motion to amend was filed six days after the deadline in the Scheduling Order, (b) Plaintiff was not diligent in seeking leave to amend because those individuals were identified on June 21, 2018, well before the filing of the first motion to amend and yet Plaintiff still has not named them, (c) Plaintiff has not shown good cause for his failure to seek amendment sooner despite having all the information he required, and (d) Defendants would be prejudiced by the introduction of new parties because discovery is already underway and there have already been motions filed, which would cause prejudice to both new and existing parties. (*Id.*)

## II.      GOVERNING LEGAL STANDARDS

### A.      Governing Legal Standards for Motions to Dismiss

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim.  *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d 204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de*

*novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp.2d at 212 n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp.2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp.2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding

that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F.

Supp.2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*,

129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate

decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1.

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the

famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint

should not be dismissed for failure to state a claim unless it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim,

the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*.

at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in

detail the facts upon which [the claim is based]," it does mean that the pleading must contain at

least "some factual allegation[s]." *Id*. at 1965. More specifically, the "[f]actual allegations must

be enough to raise a right to relief above the speculative level [to a plausible level]," assuming

(of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

129 S.Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for

relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to

infer more than the mere possibility of misconduct, the complaint has alleged–but it has not

show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 (internal quotation marks

and citations omitted). However, while the plausibility standard "asks for more than a sheer

possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability

requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to

relief, "the tenet that a court must accept as true all of the allegations contained in the complaint

is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action,

supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly,

a pleading that only "tenders naked assertions devoid of further factual enhancement" will not

suffice. *Iqbal*, 129 S. Ct. at 1949  (internal citations and alterations omitted). Rule 8 "demands

more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations

omitted).

Finally, a few words are appropriate regarding what documents are considered when a

dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal

pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the

four corners of the complaint may be considered without triggering the standard governing a

motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer,

(2) documents incorporated by reference in the complaint (and provided by the parties), (3)

documents that, although not incorporated by reference, are "integral" to the complaint, or (4)

any matter of which the court can take judicial notice for the factual background of the case.[2]

## B. Governing Legal Standards for Motions for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[3] As for the materiality requirement, a dispute of fact is

---

[2] *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . . Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

[3] As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir.

"material" if it "might affect the outcome of the suit under the governing law . . . . Factual

disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all

ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255.

In addition, "[the movant] bears the initial responsibility of informing the district court of the

basis for its motion, and identifying those portions of the . . . [record] which it believes

demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S.

317, 323-24 (1986). However, when the movant has met its initial burden, the non-movant must

come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ.

P. 56(a), (c), (e).[4]

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant

willfully fails to respond to a motion for summary judgment, a district court has no duty to

perform an independent review of the record to find proof of a factual dispute.[5] (This is because

the Court extends special solicitude to the *pro se* litigant by ensuring that he or she has received

notice of the consequences of failing to properly respond to the motion for summary judgment.)[6]

---

1998) [citation omitted]. As the Supreme Court has explained, "[The non-movant] must do more
than simply show that there is some metaphysical doubt as to the material facts." *Matsushita
Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

    [4]    Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a
response to the movant's Statement of Material Facts, which admits or denies each of the
movant's factual assertions in matching number paragraphs, and supports any denials with a
specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 7.1(a)(3).

    [5]    *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 426 & n.2 (N.D.N.Y. 209) (Suddaby,
J.) (citing cases).

    [6]    *Cusamano*, 604 F. Supp. 2d at 426 & n.3 (citing cases).

As has often been recognized by both the Supreme Court and Second Circuit, even *pro se* litigant must obey a district court's procedural rules.[7]

Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3). What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement.[8]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local

---

[7]      *Cusamano*, 604 F. Supp. 2d at 426-27 & n.4 (citing cases).

[8]      Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 7.1(a)(3).

Rule 7.1(b)(3).[9]  Stated another way, when a non-movant fails to oppose a legal argument

asserted by a movant, the movant may succeed on the argument by showing that the argument

possess facial merit, which has appropriately been characterized as a "modest" burden.  *See*

N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined

that the moving party has met its burden to demonstrate entitlement to the relief requested therein

. . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30,

2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at

*2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

## III.  ANALYSIS

### A.  Whether Defendants' Motions to Dismiss Should Be "Converted" to Motions for Summary Judgment

After careful consideration, the Court answers the question in the affirmative for the

reasons stated in the Union Defendants' reply memorandum of law.  *See, supra*, Part I.D.1.d. of

this Decision and Order.  To those reasons, the Court adds the following analysis.

As an initial matter, the Court finds that no need exists to convert Defendants' motions

into ones for summary judgment because those motions are already ones for summary judgment.

It is entirely permissible for a motion to possess a "dual nature."  *See, e.g., Cobrin Gittes &*

*Samuel v. GMIS, Inc.*, 95-CV-2296, 1995 WL 505567, at *2 (S.D.N.Y. Aug. 25, 1995)

---

[9]     *See, e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

(characterizing a plaintiff's motion as having a "dual nature" where it moved to dismiss the defendant's counterclaims for failure to state a claim pursuant to Fed. R. Civ. P. 12[b][6] and to strike a number of affirmative defenses of malpractice pursuant to Fed. R. Civ. P. 12[f]). Moreover, such a dual nature is not destroyed if one form of relief is requested as a threshold matter and the other form of relief is requested merely in the alternative. *See, e.g., Premier Fabrics, Inc. v. Woodland Trading Inc.*, 42 F. Supp.3d 549, 551-52 (S.D.N.Y. 2014) ("Plaintiff's contention[] that no summary judgment motion was filed because . . . defendants requested summary judgment . . . only as an alternative to a 12(b)(6) dismissal [is] entirely frivolous."); *cf. Spear v. City of Buffalo*, 11-CV-0012, 2014 WL 1053987, at *7 (W.D.N.Y. March 18, 2004) (considering motion for summary judgment as validly filed even though the motion could only be "rational[ly] . . . analyzed]" as having been filed in the alternative to a motion for judgment on the pleadings), *adopted*, 2014 WL 1347759 (W.D.N.Y. Apr. 4, 2014).

Here, it is not determinative that the Notices of Motion and memoranda of law-in chief were not expressly labeled "Motion for Summary Judgment," given the express language used by

the Union Defendants[10] and Defendant TCAT[11] in the bodies of the documents and in the docket entries identifying the motions.  *See, e.g., Premier Fabrics, Inc.*, 42 F. Supp.3d at 551-52 & n.1 ("Plaintiff's contentions that no summary judgment motion was filed because (a) the defendants' motion was 'labeled' as a motion to dismiss and (b) defendants requested summary judgment only in the body of the notice of motion . . . are entirely frivolous. . . .  Defendants' notice of motion . . . described the relief sought by the motion as 'an Order, pursuant to Federal Rule 12(b)(6), dismissing the First Amended Complaint . . . for a failure to state a cognizable claim of relief or, in the alternative, granting the Defendants summary judgment, pursuant to Federal Rule 56, dismissing the Plaintiff's First Amended Complaint in its entirety.'"); *cf. Spear*, 2014 WL 1053987, at *7, n.10 (considering motion for summary judgment as validly filed even though the motion was not accompanied by a statement of undisputed material facts in accordance with Local Rule 56).

---

[10]    More specifically, in the Union Defendants' Notice of Motion, they expressly grounded their motion "alternatively, [on Rule] 56 of the Federal Rules of Civil Procedure." (Dkt. No. 51.)  In addition, in their Notice of Motion, they expressly stated they were supporting their motion with, *inter alia*, a "Rule 7.1 Statement of Material Facts" (required by, and relevant only to, a motion for summary judgment). (*Id*.)  Indeed, they included a Rule 7.1 Statement along with their motion. (Dkt. No. 51, Attach. 1.)  Moreover, in their memorandum of law-in chief, they repeatedly referenced their alternative request for summary judgment under Fed. R. Civ. P. 56.  (Dkt. No. 51, Attach. 3, at 8, 12-13, 25 [attaching pages "2," "6," "7" and "19" of Union Defs.' Mem. of Law].)  Finally, they expressly docketed their motion as a "MOTION to Dismiss Part of the Revised First Amended Complaint and, alternatively, for partial summary judgment." (Docket Sheet for Entry dated 10/02/2018 [italics removed].)

[11]    In Defendant TCAT's Notice of Motion, it expressly stated that it was basing its motion on, *inter alia*, a "Rule 7.1 Statement of Material Facts" (required by, and relevant only to, a motion for summary judgment). (Dkt. No. 53.)  Indeed, it included a Rule 7.1 Statement along with its motion. (Dkt. No. 53, Attach. 1.) Moreover, it referenced Fed. R. Civ. P. 56 and a motion for summary judgment in its memorandum of law-in chief.  (Dkt. No. 53, Attach. 5, at 5, n.1.) Finally, it expressly docketed its motion as a "MOTION to Dismiss in Part or in the alternative for Partial Summary Judgment." (Docket Sheet for Entry dated 10/02/2018 [italics removed].)

Similarly, it is not determinative that Defendants at times (inaptly) cited the legal standard governing such conversions in their memoranda of law-in chief.[12] *See, e.g., Premier Fabrics, Inc. v. Woodland Trading Inc.*, 13-CV-7522, Defs.' Memorandum of Law, at 8 (S.D.N.Y. filed June 26, 2014) (inaptly citing conversion standard of Fed. R. Civ. P. 12[d], with no effect on district court's decision); *cf. Tower Props. LLC v. Village of Highland Falls,* 14-CV-04502, 2015 WL 4124499, at *9, n.3 (S.D.N.Y. July 7, 2015) ("Rather t[h]an wholesale disregard [sic] Defendants' arguments for applying the wrong standard, to the extent possible the Court reviews their arguments under the appropriate selective enforcement test."); *Spear*, 2014 WL 1053987, at *7 (considering motion for summary judgment as validly filed in the alternative even though the defendants specifically asserted they were not moving in the alternative).

In any event, even if conversion were necessary, the prerequisites for such conversion exist. According to the Second Circuit, the Court must give all parties notice and "a reasonable opportunity to present all the material that is pertinent to the motion" before converting a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) to one for summary judgment pursuant to Fed. R. Civ. P. 56. *Sahu v. Union Carbide Corp.*, 548 F.3d 59, 67 (2d Cir. 2008). "'The essential inquiry is whether the appellant should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings.'" *Sahu*, 548 F.3d at 67 (quoting *In re G. & A. Books, Inc.*, 770 F.2d 288, 295 [2d Cir. 1985]). The Second Circuit has held that "[a] party cannot complain of lack of a reasonable opportunity to present all material

---

[12]     (Dkt. No. 51, Attach. 3, at 12-13 [attaching pages "6" and "7" of Union Defs.' Memo. of Law]; Dkt. No. 53, Attach. 5, at 5, n.1 [attaching page "1" of Def. TCAT's Memo. of Law].)

relevant to a motion for summary judgment when both parties have filed exhibits, affidavits, counter-affidavits, depositions, etc., in support of and in opposition to a motion to dismiss," and has further noted that "[e]ven where only the party moving to dismiss has submitted extrinsic materials such as depositions or affidavits, the opposing party may be deemed to have had adequate notice that the motion to dismiss would be converted." *Salu*, 548 F.3d at 67.

As discussed above in Part II of this Decision and Order, the Court is permitted to consider extrinsic evidence without converting a motion to dismiss into a motion for summary judgment where the extrinsic evidence consists of (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case. The Second Circuit has stated that a document is integral to the complaint where the complaint "'relies heavily upon its terms and effect.'" *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Additionally, "'[w]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint, the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.'" *Chambers*, 282 F.3d at 153 (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 [2d Cir. 1991]). However, "'even if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document'" and there must be "'no material disputed issues of fact regarding the relevance of the document.'" *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).

Along with their motion to dismiss, the Union Defendants submitted (a) an affidavit from

Defendant David, (b) a copy of Defendant UAW Local 2300's bylaws/Constitution, (c) a certificate of incorporation for UAW Local 2300 Building Inc., and (d) a copy of the bylaws for UAW Local 2300 Building Corp. (Dkt. No. 51, Attach. 2.) Defendant TCAT submitted (a) a copy of the CBA between Defendant TCAT and Defendant UAW Local 2300, and (b) a copy of Plaintiff's termination notice. (Dkt. No. 53, Attach. 3; Dkt. No. 53, Attach. 4.)

The Court finds that the UAW Constitution, the CBA, and the termination notice are all either incorporated by reference in the Amended Complaint or integral to the Amended Complaint in that Plaintiff relied heavily on their terms. Of note, Plaintiff's Fifth Claim for defamation is based on the termination notice, his Second Claim for breach of the CBA necessarily is based on the CBA, and his Sixth, Seventh, Eighth, Ninth, and Tenth Claims for various misrepresentation, fraud, and equitable claims are all based, at least in part, on the Union Defendants' failure to inform Plaintiff of exhaustion requirements in the UAW Constitution. (Dkt. No. 45 at ¶ 20-22, 25, 44-45, 52, 62-70 85-98, 81, 99-172 [Pl.'s Am. Compl.].) Because Plaintiff has not expressed any objections to these documents on the basis of their authenticity or materiality, the Court therefore finds that it may consider these documents whether Plaintiff's motion is one to dismiss or one for summary judgment.[13]

As to the remaining evidence, the Court finds that Plaintiff had sufficient notice that the

---

[13]    Additionally, because this list encompasses all of the additional evidence submitted by Defendant TCAT with its motion to dismiss, the Court finds that whether Defendant TCAT's motion is treated as a motion to dismiss or one for summary judgment would not alter this Decision and Order. In particular, as will be discussed in greater detail below, the dismissal of all of the claims relevant to Defendant TCAT's motion is based on a finding that those claims are preempted by Section 301. *See, infra,* Part III.C.2. of this Decision and Order. Because preemption is a legal rather than a factual determination based on review of Plaintiff's allegations and the CBA, there is no factual issue to resolve regarding Defendant TCAT's motion.

Union Defendants' motion to dismiss might be converted to one for summary judgment. In particular, as discussed above, the Union Defendants (a) sought alternative relief under Fed. R. Civ. P. 56 in their notice of motion, their memorandum of law-in-chief and in their docket entry for that motion, (b) submitted a Statement of Material Facts consistent with Local Rule 7.1, and (c) submitted extrinsic evidence along with that motion. In light of the Union Defendants' clear indications that they were seeking summary judgment in the alternative, the fact that Plaintiff chose not to respond to the Union Defendants' Statement of Material Facts or to submit his own extrinsic evidence does not suggest that he lacked notice. *Salu*, 548 F.3d at 67. Plaintiff in fact acknowledged the possibility that the motion might be treated as one for summary judgment, arguing that "there are material facts in dispute," and stating in non-specific terms that he "disputes nearly half of the facts that the Union identified as 'Material.'" (Dkt. No. 59, at 9-10 [Pl.'s Opp'n Mem. of Law].)

Rather than a lack of notice, Plaintiff essentially argues that the motion should not be converted because he had not yet had an opportunity to obtain relevant evidence to oppose a motion for summary judgment. (*Id.*) However, Plaintiff has not shown "by affidavit or declaration that, for specified reasons" he could not present facts to justify his opposition to the Union Defendants' motion for summary judgment as required by Fed. R. Civ. P. 56(d). Specifically, Plaintiff has not submitted any affidavit or declaration as to (a) what evidence he requires or (b) why he does not have that evidence. Instead, in his opposition memorandum of law, Plaintiff merely states that he "must be allowed to obtain relevant documents and cross-examine [Defendant David] before his testimony is considered." (Dkt. No. 59, at 9 [Pl.'s Opp'n Mem. of Law].) Such arguments, particularly in the absence of an affidavit or declaration, are

insufficient.  *See Alphonse Hotel Corp. v. Tran*, 828 F.3d 146, 151 (2d Cir. 2016) (noting that, for a party seeking to delay resolution of a summary judgment motion on the grounds he lacks certain discovery materials, he must show that the material sought is germane to his defense [i.e., that it is reasonably expected to create a genuine issue of material fact] and is not cumulative or speculative; "a bare assertion that the evidence supporting a plaintiff's allegations is in the hands of the defendant is insufficient").   Additionally, Plaintiff has not identified any specific evidence other than Defendant David's future testimony on cross-examination and the Court cannot foresee any reasonable possibility that any testimony by Defendant David would be likely to change this Court's findings that Defendant Local 2300 is an unincorporated association and thus the *Martin* rule applies to (and bars) Plaintiff's state law claims against the Union Defendants or, in the alternative, that Plaintiff's state law claims against the Union Defendants are preempted by the duty of fair representation.  Plaintiff therefore has not shown a proper basis for this Court to exercise its discretion to allow Plaintiff time to conduct further discovery before deciding this motion despite his notice that the motion could be converted to one for summary judgment.

For all of the above reasons, Defendants' motions will be treated as motions for summary judgment, although they may still be disposed of under the standards of Fed. R. Civ. P. 12(b)(6) if and where Plaintiff has failed to state a claim upon which relief can be granted.

**B.**     **Whether Plaintiff's State Law Tort Claims Against the Union Defendants Are Barred By the *Martin* Rule**

After careful consideration, the Court answers this question in the affirmative for the reasons stated in the Union Defendants' memoranda of law.  (Dkt. No. 51, Attach. 3, at 14-19 [Union Defs.' Mem. of Law]; Dkt. No. 65, at 10-13 [Union Defs.' Reply Mem. of Law].)  To

those reasons, the Court adds the following analysis.

"The *Martin* rule 'bars all actions against an unincorporated voluntary membership association, and bars claims against the officers of such an association in their representative capacities where there is no allegation that the members of the association authorized or ratified the wrongful conduct complained of.'" *Bidnick v. Grand Lodge of Free & Accepted Masons of State of New York*, 72 N.Y.S.3d 547, 549-50 (N.Y. App. Div. 2d Dep't 2018). Despite being rejected by federal courts and many other states, the *Martin* rule continues to be the law of New York State. *See Bidnick*, 72 N.Y.S.3d at 549-50 (applying the *Martin* rule in a defamation action against the defendant unincorporated association); *Cablevision Sys. Corp. v. Commc'ns Workers of Am. Dist. 1*, 16 N.Y.S.3d 828, 829 (N.Y. App. Div. 2d Dept. 2015) (finding *Martin* barred claims against the union defendant and defendants in their representative capacities); *Palladino v. CNY Centro, Inc.*, 23 N.Y.3d 140, 148-51 (N.Y. 2014) (noting that *Martin* has been questioned, but declining to overrule it). Therefore, because the Court must apply New York law to the relevant state law claims against the Union Defendants, the *Martin* rule is the law that this Court must apply.[14]

As an initial matter, the parties disagree as to whether Defendant Local 2300 is an unincorporated association. Under New York law, "[a] voluntary, unincorporated membership

---

[14] The Court declines to accept Plaintiff's invitation to reject the *Martin* rule as a matter of policy. (Dkt. No. 59, at 15-16 [Pl.'s Opp'n Mem. of Law].) In particular, the Court does not find it proper to second-guess its colleagues on the New York Court of Appeals and New York Supreme Court Appellate Division who have continued to recognize *Martin* as a valid expression of New York law. As explained in *Palladino*, the decision of whether to overrule *Martin* involves a consideration of whether the New York legislature intended to retain *Martin* as relevant law, and the Court does not feel it is in a position to make such decisions where the New York Court of Appeals has declined to address the issue. *Palladino*, 23 N.Y.3d at 148-51.

association is neither a partnership nor a corporation.  It is not an artificial person, and has no existence independent of its members." *Martin*, 303 N.Y. at 280.  Similarly, "[a]t common law, an unincorporated association is not an entity, and has no status distinct from the persons composing it, but is, rather, a body of individuals acting together for the prosecution of a common enterprise without a corporate charter but upon methods and forms used by corporations." *Sokolow v. Palestine Liberation Org.*, 60 F. Supp. 3d 509, 524 (S.D.N.Y. 2014).

In his Amended Complaint, Plaintiff does not allege that Defendant Local 2300 is a corporate entity, registered partnership, or other kind of recognized legal entity under the law of New York or any other state; rather, he alleges only that it is "a labor organization representing employees in an industry affecting commerce" that was "the recognized collective-bargaining representative" of Defendant TCAT.  (Dkt. No. 45, at ¶ 3 [Pl.'s Am. Compl.].)  As Defendant Local 2300 argues, its official name does not include any signifier such as "Inc." or "Corp." as would be required for a corporation under New York law.  *See* N.Y. Bus. Corp. L. § 301(a)(1) ("[T]he name of a domestic or foreign corporation: . . . [s]hall contain the word 'corporation', 'incorporated' or 'limited', or an abbreviation of one of such words; or, in the case of a foreign corporation, it shall, for use in this state, add at the end of its name one of such words or abbreviation thereof."); *accord, Adson5th, Inc. v. Bluefin Media, Inc.*, 16-CV-0143, 2017 WL 2984552, at *7 n.10 (W.D.N.Y. July 13, 2017).

Plaintiff appears to rely entirely on the fact that the Union Defendants have not provided any direct evidence or documentation specifically stating that Defendant Local 2300 is a voluntary unincorporated association; but the Court finds that the evidentiary standard is not so strict.  Rather, the relevant circumstantial evidence before the Court provides sufficient reason to

find that Defendant Local 2300 is not a corporate entity and that its existence is based on

pursuing a common goal of its members; Plaintiff himself admits this common goal in the

Amended Complaint by stating that Defendant Local 2300 represents member employees and

engages in collective-bargaining on their behalf.  (Dkt. No. 45, at ¶ 3 [Pl.'s Am. Compl.].)  In his

sworn affidavit, Defendant David states that Defendant Local 2300 is an unincorporated

association pursuant to the terms of bylaws of both the local and the international Union.  (Dkt.

No. 51, Attach. 2, at ¶ 11 [David Aff.].)  Plaintiff has not offered any contrary evidence to

support his assertion that Defendant Local 2300 is not an unincorporated association.  The Court

therefore finds that, contrary to Plaintiff's argument, there is a sufficient basis to find that

Defendant Local 2300 is an unincorporated association.[15]

Additionally, although this fact is not determinative, a plethora of other courts have

indicated that various unions (both international and local branches) are unincorporated

associations, including the UAW.[16]  Again, although these cases alone are not determinative

---

[15]     The Court notes also that, contrary to Plaintiff's argument that Magistrate Judge
Peebles rejected the Union Defendants' request to find that Defendant Local 2300 is an
unincorporated association because the Union Defendants failed to provide sufficient factual
support for that request, Magistrate Judge Peebles actually declined to accept the Union
Defendants' arguments because he thought that such "thorny" issues would be more
appropriately decided on a motion to dismiss, motion for judgment on the pleadings, or motion
for summary judgment than on a motion to amend the Complaint; in fact, Magistrate Judge
Peebles stated that, although he was rejecting the Union Defendants' motion to preclude
amendment, he was "99.9 percent convinced that Local 2300 is an unincorporated association."
(Dkt. No. 44, at 27-29 [Decision and Order filed Sept. 17, 2018].)  The Court therefore does not
construe Magistrate Judge Peebles' findings on the motion to amend as in any way suggesting
that the evidence provided by the Union Defendants at that time (which includes some of the
same extrinsic evidence submitted with their current motion) was legally insufficient to establish
that Defendant Local 2300 is an unincorporated association.

[16]     *See R.M. Perlman Inc. v. New York Coat, Suit, Dresses, Rainwear & Allied
Workers' Union Local 89-22-1, I.L.G.W.U.*, 789 F. Supp. 127, 131 (S.D.N.Y. 1992) (noting that

because they are merely persuasive authority and the Court must rely on the specific facts of this case, they reinforce the Court's determination by showing that labor unions are, by and large, unincorporated associations by nature of their purpose.

Having found that Defendant Local 2300 is an unincorporated association, the Court next must address Plaintiff's arguments as to why *Martin* should nonetheless not apply in this case. The Court is not persuaded by Plaintiff's argument that the relevant claims should survive because, even if Local 2300 is dismissed as a direct party, he is "nonetheless entitled to continue to proceed on each of his claims against the Union through Mr. David as its President and representative officer." (Dkt. No. 59, at 11-12 [Pl.'s Opp'n Mem. of Law].) Plaintiff's argument appears to presume that the *Martin* rule does not apply to the claims against Defendant David in his representative capacity; but such a presumption is squarely contradicted by the relevant case law. *Bidnick*, 72 N.Y.S.3d at 549-50; *Cablevision Sys. Corp.*, 16 N.Y.S.3d at 829; *Martin*, 303 N.Y. 280-81 (involving a suit against officers of a union in their representative capacities).

N.Y. Gen Ass'ns. L. § 13 "governs unincorporated associations such as unions" and that "[t]he common law considered a labor union an unincorporated association with no legal existence independent of its individual members"); *In re Chateaugay Corp.*, 104 B.R. 626, 635 (S.D.N.Y. 1989) ("The UAW is an unincorporated association."); *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240 (6th Cir. 1997) (indicating as part of the case caption that the International UAW is a voluntary, unincorporated labor association); *White v. UAW of America*, 15-CV-1636, 2016 WL 54718, at *3-4 (E.D. Cal Jan. 5, 2016) (finding that the UAW offered sufficient extrinsic evidence to show that it is an unincorporated labor union); *Int'l UAW v. CTS Corp.*, 783 F. Supp. 390, 391 (N.D. Ind. 1992) (noting that both the International UAW and UAW Local 941 were unincorporated associations and labor organizations); *International UAW v. Mack Trucks, Inc.*, 733 F. Supp. 938, 941 (E.D. Pa 1990) (noting as a fact that the International UAW is an unincorporated association); *cf., United Ass'n of Journeymen and Apprentices of Plumbing and Popefitting Indus. of U.S. and Canada, AFL CIO v. Local 334*, 452 U.S. 615, 624 (1981) (noting that section 301 of the Taft Hartley Act "provided federal jurisdiction for enforcement of contracts made by labor organizations to counteract jurisdictional defects in many state courts that made it difficult or impossible to bring suits against *labor organizations by reason of their status as unincorporated associations*") (emphasis added).

Because Plaintiff himself acknowledges that the claims in question are against Defendant David in his representative capacity (rather than his individual capacity), those claims stand or fall with the claims against Defendant Local 2300.

In asserting that "passive approval" is sufficient to satisfy the requirements of *Martin*, Plaintiff relies entirely on a New York Supreme Court case that predates *Martin*. (Dkt. No. 59, at 11 [Pl.'s Opp'n Mem. of Law, citing *Tannenbaum v. Hofbauer*, 142 Misc. 120 (N.Y. Sup. Ct. 1931)].) However, even *Tannenbaum* does not support Plaintiff's argument that he has pled sufficient facts to overcome the bar imposed by *Martin*. Plaintiff's reliance on *Tannenbaum*'s notation that passive approval is sufficient ignores the rest of that court's statement that liability may be established "by acts of officers, agents or members of the association *where such acts are known to the membership* and actively or passively approved." *Tannenbaum*, 142 Misc. at 121 (emphasis added). *Martin* reinforced this knowledge requirement, noting that "'[a] part of the members of [a] voluntary organization cannot bind the others without their consent before the act which it is claimed binds them is done, or they, *with full knowledge of the facts*, ratify and adopt it.'" *Martin*, 303 N.Y. at 280. As the Union Defendants aptly point out, Plaintiff has not alleged any facts plausibly suggesting that the membership of Defendant Local 2300 knew of the alleged conduct. (Dkt. No. 65, at 10-11 [Union Defs.' Reply Mem. of Law]; *see generally* Dkt. No. 45 [Pl.'s Am. Compl.].) *See also A. Terzi Prods., Inc. v. Theatrical Protective Union*, 2 F. Supp. 2d 485, 492 (S.D.N.Y. 1998) (finding that allegations that the union's members ratified the wrongful acts by approving of an agreement were not sufficient because plaintiff did not allege that the members had "full knowledge" of the wrongful conduct). Without any such allegations of knowledge on the part of all members, Plaintiff has not pled facts sufficient to satisfy the

*Martin* requirements, whether or not he has asserted any allegations of passive approval (and whether or not such allegations would even be sufficient post-*Martin*, which the Court need not, and does not, decide).

The Court is similarly not persuaded by Plaintiff's attempt to distinguish *Martin* and cases that apply *Martin* by arguing that "[i]n no case . . . has a New York court applied the *Martin* rule to preclude the pursuit of claims against an unincorporated association where" it is impossible to plead that all members authorized or ratified the wrongful conduct, because he himself is a member and thus could not have ratified or approved the conduct against himself. (Dkt. No. 59, at 12-13 [Pl.'s Opp'n Mem. of Law].)  However, Plaintiff's argument is undermined by ample case law in which the *Martin* rule was applied where the plaintiff was a member of the defendant unincorporated association.  *See Modeste v. Local 1199, Drug, Hosp. and Health Care Emps. Union, RWDSU, AFL-CIO*, 850 F. Supp. 1156, (S.D.N.Y. 1994), *aff'd* 38 F.3d 626 (2d Cir. 1994) (finding that the *Martin* rule applied to state law claims even though the rule "imposes an onerous and almost insurmountable burden on individuals seeking to impose liability on labor unions," in a case in which two of the four plaintiffs were themselves members of the defendant union); *Palladino*, 23 N.Y.3d at 144 (finding *Martin* applied in a suit brought by a member of the defendant union); *accord, Lahendro v. New York State United Teachers Ass'n*, 931 N.Y.S.2d 724, 725-26 (N.Y. App. Div. 3rd Dept. 2011).  These cases establish that the *Martin* rule applies even where the plaintiff is a member of the union (and thus approval of all members would be nominally impossible), and Plaintiff has not informed the Court of any precedent to the contrary that would otherwise support his argument.

Lastly, Plaintiff argues that application of the *Martin* rule would violate his right to

petition for redress of grievances under the First Amendment and the New York State Constitution and his due process rights under the Fourteenth Amendment. (Dkt. No. 59, at 13 [Pl.'s Opp'n Mem. of Law].) However, as the Union Defendants note, Plaintiff has failed to support this assertion with any legal citations. *See e.g., Breland v. United States*, 10-CV-0007, 2011 WL 4345300, at *7 (N.D.N.Y. Sept. 15, 2011) (Suddaby, J.) (rejecting an argument that application of a statute of limitations would violate the Due Process Clause of the Fifth Amendment based in part on the fact that it was unsupported by legal citations).

Substantively, the Court finds that the arguments are baseless. As to his claim under the First Amendment, Plaintiff is not being prevented from seeking redress from this Court by the application of the *Martin* rule to his state law claims; the *Martin* rule has absolutely no effect on Plaintiff's ability to pursue and litigate his federal claim against the Union Defendants for breach of the duty of fair representation that arises from the same conduct underlying his state law claims. The fact that Plaintiff might not be able to recover the same amount of monetary damages as he might if his state claims were not barred does not suggest a constitutional violation. As to his claim under the Fourteenth Amendment, Plaintiff has not indicated in what way he believes his due process rights are violated by the application of the *Martin* rule, and specifically has not identified any substantive right protected by the Constitution or specific procedural deficiency sufficient to give rise to a violation of the Due Process Clause; Plaintiff's general, unsupported, and cursory assertion that *Martin* violates his due process rights is simply not sufficient.

For all of the above reasons, the Court finds that Plaintiff's state law claims against the Union Defendants are barred under New York law by *Martin*. As such, Plaintiff's Third, Sixth,

Eighth, Ninth, and Tenth Claims against the Union Defendants must be dismissed.[17]

### C. Whether Plaintiff's State Law Claims are Preempted by the Federal Law

After careful consideration, the Court answers this question in the affirmative for the

reasons stated in Defendants' memoranda of law. (Dkt. No. 51 [Union Defs.' Mem. of Law];

---

[17] The Court rejects the Union Defendants' argument that the *Martin* rule applies to Plaintiff's state law claims that are based on negligence (i.e., negligent infliction of emotional distress and negligent misrepresentation). Although New York law is not entirely clear on this point, the relevant cases suggest that unintentional torts are excluded where the union defendant is performing an essential union activity. *See Grahame v. Rochester Teachers Ass'n (NYSUT/AFT-AFL/CIO)*, 692 N.Y.S.2d 537, 538 (N.Y. App. Div. 4th Dept 1999) (rejecting the contention that the complaint must be dismissed based on the plaintiff's failure to allege ratification by the individual union members because "Plaintiff is not required to allege ratification of the alleged negligent act where the action against defendant union is based on the negligence of its agent 'in the course of performing an essential activity of the [union],'" but noting also that the misrepresentation was made as to a matter not addressed in the collective bargaining agreement); *Piniewski v. Panepinto*, 701 N.Y.S.2d 215, 216 (N.Y. App. Div. 4th Dept 1999) (finding that the Martin rule did not apply to a negligence cause of action related to a business manager's alleged negligence in appointing, hiring, or retaining the defendant as labor steward); *Torres v. Lacey*, 163 N.Y.S.2d 451, 451 (N.Y. App. Div. 1st Dept 1957) (*"Martin v. Curran* (303 N. Y. 276) is not applicable to an unincorporated association's unintentional tort, such as is involved in this second cause of action. Special Term correctly ruled that to require membership authorization or even ratification of such an unintentional tort is, in effect, to attempt to transmute a negligent act into a willful wrong. This is an inadmissible result, straining both law and logic."). Although some case law supports the proposition that the *Martin* rule applies to a cause of action by a union member for damages resulting from the union's failure to prosecute a grievance, Plaintiff's two negligence claims are based on more than the mere failure to prosecute his grievance, but rather on their representations to him (i.e., regarding his remedies against Defendant TCAT and his obligation to exhaust such remedies if the Union chose not to pursue his grievance) and their conduct towards him (i.e., threats and hostility). *See Walsh v. Torres-Lynch*, 697 N.Y.S.2d 434, 435 (N.Y. App. Div. 4th Dept 1999) (noting that the Martin rule applies to "a cause of action alleging an intentional tort," as well as "a cause of action by union members for damages resulting from the union's failure to prosecute member grievances"). Consequently, because Plaintiff's Fourth and Seventh Claim do not allege negligence merely based on the decision or act of failing to prosecute his grievance, the Court finds that, based on the available case law, Plaintiff's negligence-based claims are not barred by the *Martin* rule. However, as will be discussed below, these claims are nonetheless preempted by the federal duty of fair representation.

Dkt. No. 53 [Def. TCAT's Mem. of Law]; Dkt. No. 62 [Def. TCAT's Reply Mem. of Law]; Dkt. No. 65 [Union Defs.' Reply Mem. of Law].) To those reasons, the Court adds the following analysis.

As an initial matter, the Court notes that Plaintiff here has brought a "hybrid" Section 301/duty of fair representation claim in that he has asserted a claim against both the Union for a breach of the duty of fair representation and a claim against his employer for breach of the CBA. As such, Plaintiff is ultimately required to show violations by both (i.e., that Defendant TCAT breached the CBA and that the Union Defendants breached their duty of fair representation) in order to establish his hybrid claim. *Carlisle v. United Parcel Serv., Inc., Teamsters Local 687*, 735 F. App'x 9, 10 (2d Cir. 2018) (citing *White v. White Rose Food, a Div. of DiGiorgio Corp.*, 237 F.3d 174, 178 [2d Cir. 2001]).

### 1. Duty of Fair Representation Pursuant to Section 9(a) of the National Labor Relations Act (29 U.S.C. § 159)

The duty of fair representation has been found to be implicit in 29 U.S.C. § 159(a). *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 66 n.2 (1981); *Int'l Bhd. of Elec. Workers v. Foust*, 442 U.S. 42, 46 n.8 (1979). "Under the Supremacy Clause of the Constitution, state and local laws that conflict with federal law are without effect." *Figueroa v. Foster*, 864 F.3d 222, 227 (2d Cir. 2017). The Supreme Court has expressed that the NLRA and the duty of fair representation in particular do not automatically preempt any state-law claim by virtue of that claim being in the field of labor-management relations, and the Second Circuit has more recently found that such situations should be considered under the framework of conflict preemption rather than field preemption. *Figueroa*, 864 F.3d at 229-32; *Vaca v. Sipes*, 386 U.S. 171, 180-81

(1967).  Conflict preemption exists where the "state law 'actually conflicts with federal law,'" including where 'it is impossible for a private party to comply with both state and federal requirements, or where the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"  *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 95 (2d Cir. 2012) (quoting *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 [1990]).  The "obstacle" branch of conflict preemption "precludes state law that poses an actual conflict with the overriding federal purpose and objective;" however, "the mere fact of tension between federal and state law is generally not enough to establish an obstacle supporting preemption, particularly when the state law involves the exercise of traditional police power."  *Figueroa*, 864 F.3d at 235.  Rather, "the purpose of Congress is the ultimate touchstone," including the intended effects of the federal statute, "and the conflict between state law and federal policy much be a sharp one."  *Id.; see also Markham v. Wertin*, 861 F.3d 748, 759 (8th Cir. 2017) (finding preemption not applicable to state-law retaliation and discrimination claims under a conflict preemption analysis because there was no clear indication from Congress that such preemption was intended and no apparent conflict between the duty of fair representation and the plaintiff's state-law claims).

In *Peterson v. Air Line Pilots Ass'n, Int'l,* 759 F.2d 1161 (4th Cir. 1985), which the Second Circuit discussed and relied on in *Figueroa*, the Fourth Circuit found that the plaintiff's state law claims for blacklisting, conspiracy, and interference with a contractual relationship were preempted by the federal duty of fair representation in that they "seek to vindicate rights largely secured by federal law" because "the potential conflict between remedies and administration are too great to permit the state claims to stand."  *Peterson*, 861 F.3d at 1171.  The Fourth Circuit

indicated that, under the conflict-style preemption, "where the conduct sought to be regulated by state law is only a 'peripheral concern' of federal labor law or touches interests 'deeply rooted in local feeling and responsibility' [courts] are instructed that the preemption inquiry requires a sensitive balancing of the potential harm to the federal scheme against the importance of the state's interest in protecting its citizens." *Peterson*, 759 F.3d at 1168 (citing *Farmer v. United Bhd. of Carpenters and Joiners of Am., Local 25*, 430 U.S. 290, 296 [1977]).

"The duty of fair representation includes the 'obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct,'" and a breach of that duty occurs when "the union has acted in a manner that is arbitrary, discriminatory, or in bad faith." *Zuckerman v. Volume Servs. Am., Inc.*, 304 F. Supp. 2d 365, 372 (E.D.N.Y. 2004) (quoting *Vaca*, 386 U.S. at 177, 190).

The Court finds at the outset that Plaintiff did not provide any argument opposing the Union Defendants' position regarding preemption by the duty of fair representation as to his misrepresentation, fraud by concealment, breach of equitable duty, and estoppel claims; rather, Plaintiff only made arguments in opposition about his claims of intentional and negligent infliction of emotional distress.[18] Plaintiff's failure to oppose the Union Defendants' motion as to his misrepresentation, fraud by concealment, breach of equitable duty, and estoppel claims lightens the Union Defendants' burden on those claims such that their arguments need only have facial merit to succeed. *See Niedziejko v. Delaware & Hudson Ry. Co., Inc.*, 18-CV-0675, 2019

---

[18]     Plaintiff also argued that his defamation claim was not preempted; but that claim is asserted only against Defendant TCAT, and therefore will be discussed below in relation to preemption under Section 301.

WL 1386047, at *33 (N.D.N.Y. Mar. 27, 2019) (Suddaby, C.J.) ("[W]hen a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possesses facial merit, which has appropriately been characterized as a 'modest' burden."); *accord, Panagopoulos v. New York State Dept. of Transp.*, 172 F. Supp. 3d 597, 617 (N.D.N.Y. 2016) (Suddaby, C.J.).

The Court finds that the Union Defendants have met this lightened burden. Plaintiff's common allegations underlying these claims (i.e., that the Union Defendants failed to make truthful statements or disclose material facts regarding their intention to pursue a grievance on Plaintiff's behalf and failed to inform him that he was required to exhaust remedies before proceeding before the NLRB or filing a lawsuit) are all squarely within the federal duty of fair representation because they rely solely on whether the Union Defendants acted in good faith and with honesty when representing Plaintiff in their capacity as his union during the grievance process. (Dkt. No. 45, at ¶¶ 99-104, 119-23, 139-45, 156-57, 163-65 [Pl.'s Am. Compl.].) These claims are not of a "peripheral concern" to federal labor law, given that they are premised on conduct that strikes to the very heart of the duty of fair representation. To allow these state claims to proceed would pose a great risk that the Union Defendants might be subject to punishment under state law for conduct that might not violate the federal duty of fair representation;[19] such a result would create an inconsistency between federal and state law that would not serve Congress' purpose of establishing a uniform federal duty of care in the form of

---

[19]     The Court notes in particular that Plaintiff's claim for negligent misrepresentation, as its name implies, requires mere negligence; yet negligence is not sufficient to establish a violation of the duty of fair representation. *See United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 374 (1990) (endorsing the view that mere negligence is not sufficient to state a claim for a breach of the duty of fair representation).

the federal duty of fair representation. The Court therefore finds that the Union Defendants have sufficiently shown that these claims implicate a right already secured by federal law and present a great enough conflict with the federal duty of fair representation that they are subject to preemption.

As to Plaintiff's claims of negligent and intentional infliction of emotional distress, Plaintiff argues that these claims are not preempted because four of his allegations of conduct fall outside of the obligations arising from the CBA. (Dkt. No. 59, at 14 [Pl.'s Opp'n Mem. of Law].) Plaintiff does not, however, cite any legal authority to support his assertion that obligations falling outside of the CBA cannot be preempted under the duty of fair representation. To the contrary, the duty of fair representation is not defined by the rights secured in the CBA, but by federal law. *Zuckerman*, 304 F. Supp. 2d at 372. The specific allegations that Plaintiff cites all involve various allegedly threatening or hostile conduct by the Union Defendants' and/or their representatives. (Dkt. No. 59, at 14 [Pl.'s Opp'n Mem. of Law].) However, these allegations appear to fit squarely into the Union Defendants' obligations under the duty of fair representation (i.e., to represent Plaintiff in good faith and without hostility or discrimination). *Zuckerman*, 304 F. Supp. 2d at 372. The Court notes that Plaintiff's Amended Complaint, as a whole, does not contain any allegations to suggest that this conduct was somehow outside of the Union Defendants' representation of Plaintiff (even if some of the events occurred outside of the office). The Amended Complaint includes allegations that Mr. David had tried to "intimidate" him into signing a settlement agreement with Defendant TCAT, which included yelling at him and telling him he did not need a lawyer to look at the agreement. (Dkt. No. 45, at ¶¶ 37 [Pl.'s Am. Compl.].) This conduct (attempting to persuade Plaintiff to sign a settlement agreement

with his employer while acting in the capacity as Plaintiff's Union representative) is precisely what the duty of fair representation covers. Additionally, although Plaintiff cites a posting on Mr. David's Facebook page related to the phrase "Tread On Me, I Kill You" that he argues was a threat directed at him based on his race, Plaintiff does not include any factual allegations plausibly suggesting that this phrase was actually directed at him or even that it was posted around the same time that the relevant events were occurring; in other words, Plaintiff has not plausibly alleged that Mr. David's posting of this phrase (the only conduct taking place outside the scope of the representation relationship) was actually directed towards him. (Dkt. No. 45, at ¶ 45 [Pl.'s Am. Compl.] [alleging only that this phrase was on Mr. David's Facebook page as his "favorite moto"].) The Court is therefore not persuaded that the relevant allegations of threatening or hostile conduct describe anything other than conduct falling squarely within the duty of fair representation. As discussed above, given Congress' intent that such duties should be governed by federal law in order to uniformly describe what duties a union owes in its capacity as exclusive bargaining representative, the Court cannot say that allowing Plaintiff to sue for violations of these duties under state law in the form of claims for infliction of emotional distress is in accord with Congress' intent. The only other allegation pertaining to the Union Defendants (i.e., that they falsely promised to pursue a grievance on Plaintiff's behalf and withheld information regarding his rights and obligations under the CBA and the UAW Constitution) requires preemption for the same reasons as discussed above related to Plaintiff's other claims. (Dkt. No. 45, at ¶¶ 73, 81 [Pl.'s Am. Compl.].) The Court therefore finds that Plaintiff's claims for negligent and intentional infliction of emotional distress are preempted by the duty of fair representation.

## 2. Section 301 of the Labor Management Relations Act (29 U.S.C. § 185)

Section 185(a) of Title 29 of the United States Code creates a federal cause of action "for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a).

The Supreme Court has indicated that, although "state courts have concurrent jurisdiction over controversies involving collective bargaining agreements . . . any state-law cause of action for violation of collective-bargaining agreements is entirely displaced by federal law under § 301," noting that this preemption extends not only to contract actions, but also to tort actions where the tort is essentially a violation of the collective bargaining agreement and "without existence independent of the agreement." *United Steelworkers of Am., AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 368 (1990). This rule also extends to tort claims by an employee against his union where the alleged duty is imposed on the union by the collective bargaining agreement. *Rawson*, 495 U.S. at 369. The Second Circuit has found that "the powerful 'preemptive force' of Section 301, . . . displaces all claims 'substantially dependant on analysis of a collective-bargaining agreement.'" *Lane v. 1199 SEIU Healthcare Workers Labor Union*, 694 F. App'x 819, 821 (2d Cir. 2017) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 23 [1983]; *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 [1987]); *accord, Baldaracchi v. Pratt & Whitney Aircraft Div., United Techs. Corp.*, 814 F.2d 102, 104 (2d Cir. 1987).

Additionally, courts have held that, where the CBA contains a requirement that a union member can be terminated from employment only for just cause or a similar reason, state law claims that rely on the plaintiff's termination as the source of the wrongdoing require

49

interpretation of the CBA and therefore are preempted. *See McLeod v. Verizon New York, Inc.*, 995 F. Supp. 2d 134, 141 (S.D.N.Y. 2014) (finding that the plaintiff's claims that he was terminated without just cause and that the Union failed to adequately represent him during the grievance process required interpretation of the CBA and therefore were preempted); *Salamea v. Macy's East, Inc.*, 426 F. Supp. 2d 149, 154 (S.D.N.Y. 2006) (finding that, because the plaintiff was an at-will employee, any duty owed to her related to her employment arose from the CBA and therefore her state claim for negligent termination was preempted); *Duran v. Jamaica Hosp.*, 216 F. Supp. 2d 63, 69-70 (E.D.N.Y. 2002) (finding that the court would need to interpret the CBA to determine whether the defendant had justifiable and reasonable cause to terminate the plaintiff's employment).

### a. Negligent Infliction of Emotional Distress

A claim of negligent infliction of emotional distress under New York law requires a plaintiff to prove four elements: (1) that he suffered emotional distress, (2) a breach of a duty, (3) that the emotional distress was caused by the defendant's breach of that duty, and (4) the breach of the duty unreasonably endangered the plaintiff's own physical safety. *Burroughs v. Mitchell*, 325 F. Supp. 3d 249, 284-85 (N.D.N.Y. 2018) (Hurd, J.) (citing *Baker v. Dorfman*, 239 F.3d 415, 421 [2d Cir. 2000]); *see also Santana v. Leith*, 985 N.Y.S. 2d 147, 149 (N.Y. App. Div. 2d Dept 2014) (noting that, although no actual physical injury is necessary, there must be a breach of a duty owed that either unreasonably endangers the plaintiff's physical safety or causes the plaintiff to fear for his or her own safety); *accord, United States ex rel. Rubar v. Hayner Hoyt Corp.*, 306 F. Supp. 3d 478, 485 (N.D.N.Y. 2018) (Sharpe, J.). The duty "must be specific to the plaintiff" and "is far more specific than the more generalized duty to avoid negligently injuring another."

*Borroughs*, 325 F. Supp. 3d at 285.

Plaintiff's claim for negligent infliction of emotional distress therefore depends on whether Defendant TCAT owed him a duty. His allegations as to this claim indicate that the basis for his alleged emotional distress was Defendants' conduct in terminating his employment and throughout the grievance process. (Dkt. No. 45, at ¶¶ 81 [Pl.'s Am. Compl.].) These allegations therefore seem to implicate the terms of the CBA, in particular Article 26 ("Grievance Procedure") and Article 27 ("Discipline"), in that Defendant TCAT's alleged duty to Plaintiff arose from the CBA. Because Plaintiff has not otherwise suggested a duty that Defendant TCAT owed to him beyond those contained in the CBA, the Court finds that Plaintiff's claim for negligent infliction of emotional distress is preempted by Section 301.

### b. Intentional Infliction of Emotional Distress

A claim for intentional infliction of emotional distress under New York law also requires the plaintiff to prove four elements: "(1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal connection between the conduct and injury; and (4) severe emotional distress." *Borroughs*, 325 F. Supp. 3d at 285 (quoting *Bender v. City of New York*, 78 F.3d 787, 790 [2d Cir. 1996]).

Because there is no duty involved in a claim for intentional infliction of emotional distress, Defendant TCAT argues that Plaintiff's claim for intentional infliction of distress requires interpretation of the CBA to determine whether Defendant TCAT's conduct was extreme and outrageous. (Dkt. No. 53, Attach. 5, at 10-11 [Def. TCAT's Opp'n Mem. of Law].) This Court and others have indeed previously noted that "[a] determination of whether defendants' alleged conduct constitutes extreme and outrageous conduct 'depends upon whether

defendants' conduct was prohibited or condoned by the terms of the collective bargaining agreement.'" *Korthas v. Northeast Foods, Inc.*, 03-CV-0552, 2006 WL 519401, at *5 (N.D.N.Y. Feb. 27, 2006) (Munson, J.); *see also Adonna v. Sargent Mfg. Co.*, 485 F. App'x 445, 448 (2d Cir. 2012) (finding that "inquiry into whether the alleged conduct was extreme and outrageous . . . requires an interpretation of the same CBA provisions" the court had found relevant to the assessment of a claim for negligent infliction of emotional distress);[20] *accord, Buttigieg v. 40 W. 67th Street Corp.*, 17-CV-0620, 2017 WL 5515942, at *1 (S.D.N.Y. Apr. 24, 2017); *Lever v. Entergy Nuclear Operations Inc.*, 15-CV-3327, 2016 WL 1627619, at *3 (E.D.N.Y. Apr. 22, 2016).

As discussed above related to Plaintiff's claim of negligent infliction of emotional distress, Plaintiff's claim of intentional infliction of emotional distress is based on actions pursuant to his termination and the grievance process, both of which are governed by procedures outlined in the CBA. (Dkt. No. 45, at ¶ 73 [Pl.'s Am. Compl.].) The Court therefore finds that the determination of whether the alleged conduct was extreme and outrageous would require interpretation of the provisions in the CBA to see whether the alleged conduct was prohibited or condoned by the CBA. As a result, Plaintiff's claim for intentional infliction of emotional distress is also preempted by Section 301.

### c.    Defamation

A claim of defamation under New York law also requires the plaintiff to prove four

---

[20]    The Court notes that *Adonna* involved a claims of negligent and intentional infliction of emotional distress under Connecticut, rather than New York, law. However, the requirement that the alleged conduct must be extreme and outrageous is common to both states' claims for intentional infliction of emotional distress; therefore the Court finds that the same rationale would apply to a New York claim related to the "extreme and outrageous" element.

elements: "(1) a false statement that is (2) published to a third party; (3) without privilege or authorization, and that (4) causes harm, unless the statement is one of the types of publications actionable regardless of harm." *Elais v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017).

Plaintiff's defamation claim arises from Defendant TCAT's statement that the accident in which he was involved (and which resulted in his termination) was "preventable based on failure to observe Ms. Stedwell in the crosswalk." (Dkt. No. 45, at ¶¶ 85-98 [Pl.'s Am. Compl.].) Plaintiff argues that "[t]he question before the Court is not whether TCAT had the right, under the Collective Bargaining Agreement to make a statement, the question is whether the statement it made was false and defamatory." (Dkt. No. 59, at 15 [Pl.'s Opp'n Mem. of Law].) However, whether Defendant TCAT had the right (or, perhaps, the obligation) to make those statements in Plaintiff's termination notice is in fact relevant to assessing Plaintiff's defamation claim because it goes directly to whether Defendant TCAT was privileged or authorized to make those statements. Plaintiff appears to ignore the fact that even a false statement will not constitute defamation if the speaker is privileged or authorized to make it. *Elias*, 872 F. Supp. 3d at 104. Determining whether Defendant TCAT is privileged or authorized to make such statements would require interpretation of the CBA, because any such privilege or authorization would be found within the CBA. *See Korthas*, 2006 WL 519401, at *7-8 (finding that the defamation claim was preempted where the CBA required the employer to have legitimate reasons to discharge employees because that duty was implicated in whether the employer was authorized–i.e., required–to make the allegedly false statements, which were in connection with its reasons for terminating the plaintiff's employment); *Stuart v. Adelphi Univ.*, 94-CV-4698, 1994 WL 593766, at *1 (S.D.N.Y. Oct. 28, 1994) (noting that the collective bargaining

agreement would be implicated in assessing privilege related to a defamation claim).

In particular, Defendant TCAT argues in its opposition memorandum of law that the CBA "expressly provides for Union representation in any disciplinary meeting," and that employee files can be made available to persons within TCAT for TCAT-related activities and Union representatives for the purposes of representation, but should otherwise be held in confidence absent the written permission of the employee or a legal requirement to disclose those files. (Dkt. No. 53, Attach. 5, at 7-8 [Def. TCAT's Opp'n Mem. of Law]; Dkt. No. 53, Attach. 3, at 33, 56 [CBA].) Therefore, under the CBA, Defendant TCAT would appear to be authorized to share the termination notice containing the allegedly false statements with Union representatives or TCAT employees for TCAT-related purposes. In the Amended Complaint, Plaintiff alleges that the termination notice was published with "multiple third parties." (Dkt. No. 45, at ¶ 92 [Pl.'s Am. Compl.].) He elaborates that the termination notice was given to him at a meeting attended by himself, Defendant TCAT's Director of Operations, Defendant TCAT's Acting General Manager, Mr. Howells as Union representative, and one of his supervisors. (*Id.* at ¶¶ 24-25.) Notably, Plaintiff does not appear to allege that the termination notice or the statements they contained were published by Defendant TCAT to anyone outside of TCAT or his Union representatives. Given the above statement in the CBA that authorizes Defendant TCAT to share employment-related information with persons within TCAT for TCAT-related purposes and Union representatives, the Court would need to interpret the scope of the CBA to determine whether Defendant TCAT was authorized to share the allegedly false statements with the specific third parties involved. Consequently, the Court finds that Plaintiff's defamation claim is also preempted by Section 301.

#### d. Public Policy Claims

Plaintiff also asserts that the actions taken by Defendant TCAT in committing the above-discussed torts violate New York public policy. However, Plaintiff has not identified what public policies have been violated, much less explained how they are unrelated to matters covered by the CBA. *See Eckert v. United Auto. Workers, Local Union 897*, 04-CV-0538, 2012 WL 638810, at *8 (W.D.N.Y. Feb. 27, 2012) (finding that a violation of public policy claim was preempted by Section 301, noting that the plaintiff had not identified any state policy that had been violated outside of generalized references to state statutes). Consequently, the public policy aspects of Plaintiff's claims are also preempted.

### D. Whether Plaintiff Should Be Granted Leave to Amend the Amended Complaint

After careful consideration, the Court answers this question in the negative for the reasons stated in the Defendants' memoranda of law. (Dkt. No. 69, at 9-19 [Union Defs.' Opp'n Mem. of Law]; Dkt. No. 71, at 7-13 [Def. TCAT's Opp'n Mem. of Law].) To those reasons, the Court adds the following analysis.

In addition to agreeing with the timeliness, prejudice, and lack of good cause arguments asserted by Defendants, the Court finds that allowing Plaintiff's amendments would be futile. Pursuant to Fed. R. Civ. P. 15(a)(2), "[t]he court should freely give leave [to amend the complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, justice does not require leave to amend in cases of "'[u]ndue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [or] futility of amendment.'" *Dougherty v. Town of N. Hempstead Bd.*

55

*of Zoning Appeals*, 282 F.3d 83, 87 (2d Cir. 2002) (quoting *Foman v. Davis*, 371 U.S. 178, 182 [1962]).  "An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to [Fed. R. Civ. P.] 12(b)(6)."  *Dougherty*, 282 F.3d at 88 (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 [2d Cir. 1991]).

The Court notes that Plaintiff's proposed amendments all depend on a plausible suggestion that the *Martin* rule does not apply.  (Dkt. No. 67, at 6-8, 11-12 [Pl.'s Mem. of Law].)  However, the Court finds that these amendments do not solve the pleading problems related to *Martin* that were identified above in Part III.B. of this Decision and Order.  In particular, the addition of the individual members of Local 2300 as parties to this action does not change the fact that Plaintiff still has not alleged facts plausibly suggesting that all those members ratified the allegedly wrongful conduct as required under *Martin*; Plaintiff's allegation that these proposed Doe defendants "are believed to have authorized or ratified the actions described" is simply too generic and unsupported by factual allegations to suffice.  (Dkt. No. 67, Attach. 1, at ¶ 7 [Pl.'s Proposed Second Am. Compl.].)  Nor does Plaintiff's addition of factual allegations regarding the Union Constitution and an affidavit from Mr. David plausibly suggest that the Union members ratified those actions.  (Dkt. No. 67, Attach. 1, at ¶¶ 51-53].)  In short, Plaintiff's proposed amendments do not plausibly suggest that the proposed Doe defendants representing the members of Defendant Local 2300 had full knowledge of the facts related to the alleged wrongful conduct, much less that they actually ratified that conduct.  Plaintiff's proposed amendments therefore would not preclude application of *Martin* and this motion to amend must therefore be denied as futile.

Additionally, Plaintiff's argument that, "[a]t the very minimum, the Amendment should

be granted to allow [him] to undertake discovery within the bounds of this case to determine the scope and nature of each members['] involvement in and liability for the wrongdoing alleged" is contrary to the established pleading standards. Particularly, one of the purposes of the requirement that a plaintiff must allege sufficient facts to state a plausible claim in order to survive dismissal is to prevent plaintiffs with potentially baseless or unsupported claims from engaging in an unwarranted expedition to search for evidence to support their claims. *See Bald Hill Builders, LLC v. 2138 Scuttle Hole Road Realty, LLC*, 17-CV-0107, 2017 WL 3668769, at *4 (E.D.N.Y. Aug. 23, 2017) (finding that the plaintiff's request to survive a motion for summary judgment in order to engage in discovery related to its claims constituted "aimless trawling" that was contrary to pleading requirements); *Utts v. Bristol-Myers Squibb Co.*, 251 F. Supp. 3d 644, 673 (S.D.N.Y. 2017) ("The motion to dismiss mechanism exists to prevent plaintiffs from conducting fishing expeditions to see if they can cobble together meritorious claims."). In other words, if Plaintiff cannot allege sufficient facts regarding the members' involvement to state a plausible claim, he is not entitled to have his claims proceed for further discovery.

For all of the above reasons, Plaintiff's motion to amend the Amended Complaint is denied.

### E. Whether Plaintiff's Motion In Limine Should Be Granted

After careful consideration, the Court answers this question in the negative for the reasons stated in Defendants' opposition memoranda of law. (Dkt. No. 56, at 6-12 [Union Defs.' Opp'n Mem. of Law]; Dkt. No. 58, at 7-11 [Def. TCAT's Opp'n Mem. of Law].) To those reasons, the Court adds the following analysis.

The purpose of a motion in limine is to allow the trial court to rule in advance of trial on

the admissibility and relevance of certain forecasted evidence. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984); *see also Jones v. Harris*, 665 F. Supp. 2d 384, 404 (S.D.N.Y. 2009) (denying a motion in limine without prejudice as premature because "[i]n limine motions deal with evidentiary matters and are not to be filed until the eve of trial"); *accord, Castle v. United States*, 15-CV-0197, 2017 WL 6459514, at *16 (N.D.N.Y. Dec. 18, 2017) (Suddaby, C.J.). "Evidence should be excluded on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." *Wechsler v. Hunt Health Sys., Ltd.*, 94-CV-8294, 2003 WL 21998985, at *2 (S.D.N.Y. Aug. 22, 2003).

Plaintiff's motion to preclude Defendant TCAT from introducing any evidence that "refers to, relates to or is designed to support the conclusion that" Plaintiff was negligent or was terminated from his employment because he was negligent is overbroad and premature. *See Reed v. Edmonds*, 05-CV-5906, 2006 WL 435453, at *1 (S.D.N.Y. Feb. 22, 2006) (denying motion in limine without prejudice where the court found the motion to be premature given the fact that the case was still in its early stages, discovery was not complete, and dispositive motions had not yet been filed). In this motion, Plaintiff seeks to preclude huge swaths of unidentified evidence, some of which had not even been produced given that discovery was still ongoing at the time of his motion in limine. The Court, in its discretion, declines to rule on the admissibility of evidence where it does not have any clear indication of the particular evidence sought to be excluded or its intended use; without the specific evidence before it for examination, the Court certainly cannot determine whether such evidence would be inadmissible in all respects. *See Nationwide Mut. Ins. Co. v. Mortensen*, 00-CV-1180, 2010 WL 5071046, at *3 (D. Conn. Dec. 7, 2010) (finding the plaintiff's motion in limine to exclude evidence premature where it did not

specify which exhibits were actually irrelevant).  To the extent that Plaintiff has more concrete

objections to evidence produced during discovery in the future, he will be permitted to raise

those objections.

In addition, Plaintiff's attempt to exclude all evidence indicating that he was negligent

(and thus there was no basis to fire him under the collective bargaining agreement) is essentially

an alternative attempt to dismiss certain claims; preclusion of all of the requested evidence would

make it impossible for a factfinder to find that Plaintiff was terminated for an allowable reason,

and such is not a permissible use for a motion in limine.  *See Weiss v. La Suisse, Societe*

*D'Assurances Sur La Vie*, 293 F. Supp. 2d 397, 403 (S.D.N.Y. 2003) (denying a motion in limine

to exclude "all evidence" relating to the contract claims because that was, in effect, a motion to

dismiss the claims, and "[i]n limine motions are generally not the appropriate vehicle for

effecting dismissal"); *accord, MF Global Holdings Ltd. v. PricewaterhouseCoopers LLP*, 232 F.

Supp. 3d 558, 578 (S.D.N.Y. 2017).

Consequently, Plaintiff's motion in limine is denied without prejudice.

**ACCORDINGLY**, it is

**ORDERED** that the Union Defendants' partial motion to dismiss and/or for summary

judgment (Dkt. No. 51) is **GRANTED**; and it is further

**ORDERED** that Defendant TCAT's partial motion to dismiss and/or for summary

judgment (Dkt. No. 53) is **GRANTED**; and it is further

**ORDERED** that the following claims are **DISMISSED**:

(1)     Plaintiff's Third Claim for intentional infliction of emotional distress;

(2)     Plaintiff's Fourth Claim for negligent infliction of emotional distress;

(3)      Plaintiff's Fifth Claim for defamation;

(4)      Plaintiff's Sixth Claim for intentional misrepresentation, fraud, and civil

conspiracy;

(5)      Plaintiff's Seventh Claim for negligent misrepresentation and civil conspiracy;

(6)      Plaintiff's Eighth Claim for fraud by concealment;

(7)      Plaintiff's Ninth Claim for equitable estoppel/equitable tolling; and

(8)      Plaintiff's Tenth Claim for promissory estoppel; and it is further

**ORDERED** that the following claims **SURVIVE** Defendants' motions to dismiss:

(1)      Plaintiff's First Claim against the Union Defendants for breach of the duty of fair

representation; and

(2)      Plaintiff's Second Claim against Defendant TCAT for breach of the collective

bargaining agreement;[21] and it is further

**ORDERED** that Plaintiff's motion to amend the Amended Complaint (Dkt. No. 67) is

**DENIED**; and it is further

**ORDERED** that Plaintiff's motion in limine (Dkt. No. 55) is **DENIED** without

prejudice.

Dated: July18, 2019
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge

---

[21]     The Court notes that Defendants did not move to dismiss either of these claims as part of their motions.