UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CARLOS LEONEL CRUZ,

                    Plaintiff,

v.                                                          3:18-CV-0048
                                                            (GTS/ML)
UAW LOCAL 2300; TOMPKINS
CONSOLIDATED AREA TRANSIT, INC.;
JASON DAVID, President, UAW Local 2300;
FRANK HOWELLS, Union Representative, UAW
Local 2300; and DOES 2-10,

                    Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

TECHNOLOGY LAW GROUP, LLC                        NEIL S. ENDE, ESQ.
   Counsel for Plaintiff
5335 Wisconsin Avenue NW, Suite 440
Washington, DC 20015

OFFICE OF ROBERT G. WELLS                        ROBERT G. WELLS, ESQ.
   Co-Counsel for Plaintiff
120 East Washington Street, Suite 825
Syracuse, NY 13202

BLITMAN & KING, LLP                              KENNETH L. WAGNER, ESQ.
   Counsel for the Union Defendants
443 North Franklin Street, Suite 300
Syracuse, NY 13204

HANCOCK ESTABROOK, LLP                           JOHN T. McCANN, ESQ.
   Counsel for Defendant TCAT                     EMILY MIDDLEBROOK, ESQ.
100 Madison Street, Suite 1500
Syracuse, NY 13202

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this labor rights action filed by Carlos Leonel Cruz ("Plaintiff") against the United Automobile Workers ("UAW") Union Local 2300, Jason David, and Frank Howells (collectively "Union Defendants"), Tompkins Consolidated Area Transit ("TCAT"), and Does 2-10, are the following three motions: (1) Plaintiff's motion for summary judgment; (2) Defendant TCAT's cross-motion for summary judgment; and (3) the Union Defendants' motion for summary judgment.[1] (Dkt. Nos. 89, 115, 117.) For the reasons set forth below, Plaintiff's motion is denied, Defendant TCAT's cross-motion is granted, and the Union Defendants' motion is granted.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Amended Complaint

In his Amended Complaint, Plaintiff asserted ten claims: (1) breach of the duty of fair representation against Defendant Local 2300; (2) breach of the collective bargaining agreement ("CBA") by Defendant TCAT; (3) intentional infliction of emotional distress against Defendants TCAT, Local 2300, and David; (4) negligent infliction of emotional distress against all Defendants; (5) defamation against Defendant TCAT and Does 2-10; (6) intentional

---

[1] The Union Defendants styled their motion for summary judgment as a cross-motion for summary judgment; however, the Court finds that it is more properly a motion for summary judgment because (a) Plaintiff states in his motion for summary judgment that it is for partial summary judgment against Defendant TCAT only, (b) the arguments asserted in Plaintiff's motion are as to issues related to Defendant TCAT only (i.e., whether the accident was preventable and whether Defendant TCAT violated the Collective Bargaining Agreement, and (c) the relief sought in the conclusion seeks a grant of summary judgment with respect to Count II of Amended Complaint, a claim asserted against Defendant TCAT only. (*See generally* Dkt. No. 89 [Pl.'s Mem. of Law].) *See also* N.D.N.Y. L.R. 7.1(c) (noting that a cross-motion is "a request for relief that competes with the relief requested by another party against the cross-moving party").

misrepresentation and/or fraud and civil conspiracy against Defendants Local 2300 and David; (7) negligent misrepresentation and civil conspiracy against Local 2300, David, and Howells; (8) fraud by concealment against Local 2300, David, and Howells; (9) equitable estoppel/equitable tolling against Local 2300; and (10) promissory estoppel against Local 2300. (Dkt. No. 45 [Pl.'s Am. Compl.].)

On July 18, 2019, the Court issued a Decision and Order on Defendants' motions to dismiss that resulted in the dismissal of all but Plaintiff's First Claim for breach of the duty of fair representation against Defendant Local 2300 and Plaintiff's Second Claim for breach of the CBA against Defendant TCAT. (Dkt. No. 114 [Decision and Order filed July 18, 2019].) As a result, only those two claims remain at issue in this litigation.

## B.     Undisputed Material Facts on Plaintiff's Motion for Summary Judgment

Plaintiff's "Statement of Undisputed Facts" submitted as part of his motion for summary judgment fails to satisfy the requirements of Local Rule 7.1 of the Local Rules of Practice for this Court. In particular, although Plaintiff has provided his asserted facts in numbered paragraphs, he has not "set forth a specific citation to the record where [each asserted] fact is established." N.D.N.Y. L.R. 7.1(a)(3). Local Rule 7.1(a)(3) specifically warns that "[f]ailure of the moving party to submit an accurate and complete Statement of Material Facts shall result in denial of the motion." *Id.* Plaintiff's complete failure to cite any evidence to support his "Statement of Undisputed Facts" renders his motion for summary judgment substantially insufficient and the Court therefore finds that it must be denied.

In the alternative, as will be discussed in greater detail below in Part III of this Decision and Order, the Court also finds that it would have necessarily denied Plaintiff's motion based on

its finding that Plaintiff has not established the prerequisites to sustain his hybrid Section 301/duty of fair representation claim.

### C. Undisputed Material Facts on Defendant TCAT's Cross-Motion for Summary Judgment

Unless otherwise noted, the following facts were asserted and supported with accurate record citations by Defendant TCAT in its Statement of Material Facts and expressly admitted by Plaintiff in his response thereto or denied without appropriate record citations supporting his denial. (*Compare* Dkt. No. 115, Attach. 22 [Def. TCAT's Rule 7.1 Statement] *with* Dkt. No. 122, Attach. 13 [Pl.'s Rule 7.1 Resp.].)

1. Plaintiff was employed by Defendant TCAT as a bus operator from July 6, 2010, to November 15, 2016.

2. During the course of driving a TCAT bus during the early morning hours of January 26, 2015, Plaintiff struck and killed a pedestrian in the crosswalk of a road on the Cornell University campus as he was making a left-hand turn. Plaintiff entered the intersection from a stop sign, but failed to observe the pedestrian in the crosswalk.

3. As part of its regular policies and procedures, Defendant TCAT convened an Accident Review Committee to determine whether the fatal accident on January 26, 2015, was preventable.

4. The Accident Review Committee reviewed, among other documents, statements by Plaintiff and witnesses who were passengers on the bus operated by Plaintiff at the time of the accident, a Collision Reconstruction Report prepared by the New York State Police, and guidelines issued by the New York State Public Transportation Safety Board ("PTSB") and the

National Safety Council, as well as applicable policies promulgated by Defendant TCAT to all bus operators.

5.      The Accident Review Committee concluded that the fatal accident on January 26, 2015, was preventable and could have been avoided if Plaintiff had continuously performed a defensive driving turning procedure called "rock and roll" as he made his turn into the intersection.[2]

6.      The general standard that TCAT bus operators drive in a defensive manner is set forth in detail in the TCAT Bus Operator and Maintenance Training Manual and Employee Handbook provided to all bus operators, including Plaintiff.

7.      Plaintiff received training on the execution of the "rock and roll" procedure referenced in the Accident Review Committee's report on October 19, 2014, less than four months before the fatal accident on January 26, 2015.

8.      As indicated in the Accident Review Committee's report, "[t]he rock and roll procedure requires the bus operator to roll forward and back, while scanning the front and sides of the bus and scanning the driver side and curbside mirrors.  This rock and roll procedure must occur prior to turning, while turning, and up to completion of the turn to ensure the safety zone around the vehicle is clear."

9.      The Accident Review Committed concluded that, if Plaintiff had properly

---

[2]      Plaintiff admits that these were the Accident Review Committee's findings, but denies that he failed to perform the "rock and roll" while executing his turn.  (Dkt. No. 122, Attach. 13, at ¶ 5 [Pl.'s Rule 7.1 Resp.].)  However, this factual assertion addresses only what the Accident Review Committee found, and it constitutes an accurate summation of those findings. This asserted fact is therefore deemed admitted.  To the extent that Plaintiff has continued to make similar denials in a manner that is not responsive to the actual asserted fact, the Court will not continue to note those objections.

executed the "rock and roll" procedure, continuously rocking back and forth and scanning to the front and left side of the bus as he made the turn, he should have seen the pedestrian in the crosswalk as he was making the turn despite the pedestrian's failure to perceive the bus turning towards her.

10.    Two passengers on the bus saw the pedestrian before impact: Catherine Kempf saw the pedestrian in the crosswalk, and Jonathon Easton saw the pedestrian through the front windshield of the bus as Plaintiff was turning the bus; Mr. Easton stated that he "couldn't believe [Plaintiff] didn't see her."

11.    Members of the Accident Review Committee were unanimous in concluding that Plaintiff should have seen the pedestrian had he utilized the "rock and roll" procedure as he made the turn.

12.    Defendant TCAT decided to terminate Plaintiff's employment based on the Accident Review Committee's preventability determination.

13.    Nancy Oltz (Operations Manager for TCAT) met with Plaintiff and his Union representative on November 16, 2016, to present him with a termination notice.

14.    After the Accident Review Committee rendered its report and Defendant TCAT terminated Plaintiff's employment, the PTSB issued a report on the accident, which set forth the following conclusions:

> The PTSB staff determined that the most probable cause of the collision was the [bus operator] for failing to observe and recognize the pedestrian as a hazard prior to the collision. In addition, failing to utilize the required defensive driving technique for [bus operators] that are designed to prevent collisions with pedestrians and in which

he was instructed."[3]

15.     No governmental entity reached a conclusion that the fatal accident on January 26, 2016, was not preventable contrary to the conclusions of the Accident Review Committee.

16.     Defendant Local 2300 filed a grievance contesting Plaintiff's discharge, which was denied by Defendant TCAT.

17.     Defendant TCAT, the Union Defendants, and Plaintiff participated in mediation with a mediator from Federal Mediation and Conciliation Services ("FMCS") in an effort to resolve the grievance, during which a settlement was reached.[4]

18.     In the months following mediation, Defendant TCAT and the Union Defendants

---

[3]     Plaintiff disputes this asserted fact, arguing that it does not "fully and accurately set[] forth the conclusions" of the PTSB. (Dkt. No. 122, Attach. 13, at ¶ 15 [Pl.'s Rule 7.1 Resp.].) However, the language of the asserted fact is a direct quote of the PTSB's findings from its report. To the extent that Plaintiff objects to Defendant TCAT's assertion that the PTSB's conclusions were in "full agreement" with Defendant TCAT's conclusions, the Court has accepted that denial because the PTSB report discusses what the "probable cause" of the accident was, not whether the accident was preventable (the standard used in the Accident Review Committee's report), and thus the Court cannot find that the PTSB agreed that the accident was preventable. However, the Court notes that the PTSB report does indicate that the PTSB agreed with the Accident Review Committee that Plaintiff should have recognized the pedestrian as a hazard and that he failed to use the required defensive driving techniques. (Dkt. No. 115, Attach. 13, at 3-4.)

[4]     Plaintiff denies this asserted fact. (Dkt. No. 122, Attach. 13, at ¶ 18 [Pl.'s Rule 7.1 Resp.].) However, Plaintiff's assertions that he did not know the meeting was a mediation or that the mediator was a mediator are contradicted by both the deposition testimony of Defendant Howells and his own deposition testimony. (Dkt. No. 122, Attach. 2, at 100-01 [Howells Dep.]; Dkt. No. 122, Attach. 9, at 136 [dep. page 343] and 138 [dep. page 351] [Pl.'s Dep.].) Thus, to the extent Plaintiff's more recent affidavit submitted to oppose Defendant TCAT's motion for summary judgment is inconsistent with his previous deposition testimony, the Court need not credit Plaintiff's affidavit. *See Hayes v. New York City Dep't of Corrs.*, 84 F.3d 614, 619 (2d Cir. 1996) ("[A] party may not create a genuine issue of material fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony."). This fact is therefore deemed admitted.

exchanged several drafts of a Settlement Agreement that Plaintiff refused to sign.

19.     After Plaintiff failed to execute the proposed Settlement Agreement, Defendant

Local 2300's Executive Board unanimously decided not to take the grievance to arbitration.

20.     The Executive Board did not want to take the grievance to arbitration because it

believed the settlement Local 2300 had secured was fair and that Local 2300 would lose at

arbitration.[5]

21.     The Executive Board believed that Local 2300 would be unsuccessful at

arbitration because there was no "direct evidence" or "proof" that Plaintiff used the defensive

driving techniques for which he was trained.[6]

_____

[5]     Plaintiff denies this asserted fact, acknowledging that this is the reason that has been stated for the Executive Board's decision, but asserting that he believes the real reason is because of Defendant David's "personal animus toward [Plaintiff] as a brown-skinned immigrant." (Dkt. No. 122, Attach. 13, at ¶ 21 [Pl.'s Rule 7.1 Resp.].)  However, the only evidence Plaintiff cites to contradict the wealth of evidence supporting the stated reason of the Executive Board is his own affidavit in which he states his belief that Defendant David "did not recommend" that Local 2300 pursue his grievance because "he did not want to help a brown-skinned immigrant." (Dkt. No. 122, Attach. 8, at ¶ 41 [Pl.'s Aff.].)  Not only does Plaintiff not provide any evidence to support his belief, but the statement in his affidavit addresses only why Defendant David did or did not recommend that the grievance be taken to arbitration; it does not address the fact that it was the Executive Board (not Defendant David) who ultimately made the determination not to pursue the grievance to arbitration.  The Court notes that the evidence establishes that Defendant David did not vote in that decision.  (Dkt. No. 122, Attach. 3, at 29 [David Dep.]; Dkt. No. 125, Attach. 1, at ¶ 9 [Johnson Aff.].)  As a result, Plaintiff's citation to his belief that Defendant David had improper motivations does nothing to dispute the stated motivations of the six members of the Executive Board who actually made the decision.  This fact is therefore deemed admitted.

[6]     Plaintiff denies this asserted fact, but the Court finds that denial ineffective for the reasons already discussed above in note 5 of this Decision and Order.  In addition, the Court notes that Plaintiff's current assertion that he did perform the "rock and roll" procedure does not contradict the asserted fact that the Executive Board found there was no direct evidence to prove that Plaintiff did indeed performed the "rock and roll" procedure.  Notably, the written statement Plaintiff made contemporaneous with the accident investigation does not suggest that he performed the "rock and roll" procedure, and he has not cited any evidence to establish that he

8

22.     Additionally, Defendant Local 2300 did not want an unsuccessful pursuit of

Plaintiff's grievance to impair its ability to settle grievances with Defendant TCAT in the future.[7]

23.     Defendant Local 2300's concern over potentially receiving an adverse arbitration

award was based on a prior arbitration upholding the discharge of a bus operator for hazardous

driving even though that driver's conduct had not resulted in an accident.

24.     Defendant David informed Plaintiff that Defendant Local 2300 would not be

pursuing its grievance concerning his termination to arbitration, but would be withdrawing that

grievance.

25.     Defendant David advised Plaintiff that his rights related to the denial of arbitration

were outlined in the International UAW Constitution.[8]

26.     Plaintiff failed to use Defendant Local 2300's internal appeal procedures to

---

made statements specifically about having performed the "rock and roll" procedure at any time
before the Executive Board made its decision.  (Dkt. No. 115, Attach. 2, at 2-3 ["I pulled up to
the stop sign, put on my left turn signal, looked both ways and proceeded left."].)  As a result, the
asserted fact is deemed admitted.

[7]     Plaintiff's denial of this asserted fact is insufficient for the reasons discussed
above in note 5 of this Decision and Order.

[8]     The Court agrees with Plaintiff that the asserted fact, as stated in Defendant
TCAT's Statement of Material Facts, is not supported by any evidence.  However, the revised
fact is supported by the evidence and undisputed.  The record contains a copy of the email in
which Defendant David apprised Plaintiff that his rights were outlined in the UAW Constitution,
and Plaintiff testified at his deposition that he received this email and acknowledged that,
although the email contained the reference to the UAW Constitution and his rights, he did not
investigate the UAW Constitution or those rights at any time after receiving the email.  (Dkt. No.
117, Attach. 15, at 2; Dkt. No. 122, Attach. 9, at 156 [dep. pages 421-22].)  Consequently, to the
extent that Plaintiff's affidavit submitted to oppose Defendant TCAT's motion for summary
judgment now states that Defendant David never gave him any information about the UAW
Constitution or its existence, that portion of the affidavit must be disregarded as inconsistent with
his prior testimony.  *Hayes*, 84 F.3d at 619.

challenge its decision declining to take the grievance concerning his termination to arbitration.

27.     The UAW Constitution clearly states that members have the right to appeal any action, decision or penalty by "[a] Local Union, or any of its units, committees, officers, committeepersons or stewards."

28.     The UAW Constitution further provides a specific example of the normal route of appeal for challenging the handling or disposition of a grievance by a Local Union.[9]

**D.     Undisputed Material Facts on the Union Defendants' Motion for Summary Judgment**

Unless otherwise noted, the following facts were asserted and supported with accurate record citations by the Union Defendants in their Statement of Material Facts and expressly admitted by Plaintiff, or denied without appropriate record citations supporting his denial, in his response thereto.  (*Compare* Dkt. No. 117, Attach. 1 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 122, Attach. 14 [Pl.'s Rule 7.1 Resp.].)

1.     Defendant Local 2300 represents a bargaining unit of approximately 100 bus operators and mechanics employed by Defendant TCAT; it also represents employees in bargaining units at Cornell University and four other employers, with some 1,200 members in total.

2.     Defendant Local 2300 and Defendant TCAT have been parties to a series of CBAs that cover the wages, hours, and other terms and conditions of employment of bargaining-unit employees; the agreement in effect during the period of the underlying events at issue in this

---

[9]     The Court has revised this asserted fact to more closely track the language of the cited portion of the UAW Constitution, and notes that Plaintiff has not created any sufficient dispute of fact as to what the UAW Constitution says.

litigation covered from January 1, 2015, through June 30, 2018.

3. Article 26 of the CBA contains a grievance procedure that culminates in final and binding arbitration. More specifically, Article 26 outlines a multi-step series of meetings between union and management representatives to resolve disputes arising under the contract. Step 1 contemplates the employee's orally presenting the complaint to a supervisor. If the matter is not resolved, a written grievance is presented at Step 2. If no resolution is reached, the grievance may be pressed at Step 3. If it is still not settled, the union may submit the grievance to be determined by an impartial arbitrator at Step 4. In addition to these four steps, Section 5 of the CBA provides for an optional mediation to be conducted by a mediator assigned by FMCS.

4. The determination of whether Defendant Local 2300 submits a particular grievance to arbitration is made by the Executive Board; the president of Local 2300 does not vote except in the event there is a tie.

5. Plaintiff was employed as a bus operator by Defendant TCAT from 2010 until his termination from employment effective November 16, 2016.

6. On the morning of January 26, 2015, Plaintiff was involved in an accident while driving a TCAT bus that resulted in a pedestrian being killed. Defendant TCAT suspended Plaintiff immediately with pay pending investigation of the accident.

7. Following an investigation by its Accident Review Committee, Defendant TCAT terminated Plaintiff's employment, citing the Committee's conclusion that "this accident was preventable based on failure to observe [the pedestrian] in the crosswalk."

8. On November 29, 2016, Defendant Local 2300 submitted a grievance challenging the termination.

9.      Defendant Local 2300 submitted an information request to Defendant TCAT.

10.      After receiving responsive documents from Defendant TCAT, a meeting was scheduled and held on or about December 21, 2016.

11.      Defendant Local 2300 met with Plaintiff before meeting with Defendant TCAT.

12.      During the Step 3 meeting with TCAT Acting General Manager Alice Eccleston and TCAT Operations Manager Nancy Oltz, Defendant Local 2300 argued its positions that (a) discharge was too severe a sanction, (b) the Accident Review Committee could not prove the accident was preventable, (c) the placement of the bus' side mirror was faulty, and (d) progressive discipline was required under the CBA. TCAT management rejected these arguments and denied the grievance.

13.      Following the Step 3 meeting, Defendant David was concerned about the risks of arbitrating the grievance and believed there was still a reasonable chance to settle the grievance, so he instructed Defendant Howells to request mediation. Defendant TCAT accepted the request, and the mediation was held at Defendant TCAT's offices on January 26, 2017.

14.      FMCS Commissioner Scott Montani conducted the mediation, which Plaintiff, Defendant Howells and Defendant David attended for Local 2300, and Ms. Eccleston and Ms. Oltz attended for Defendant TCAT.

15.      The mediation lasted approximately two hours; after an initial joint meeting, Commissioner Montani shuttled between the parties, who were in different rooms.

16.      Throughout the mediation, while Commissioner Montani was meeting separately with Ms. Eccleston and Ms. Oltz, the union representatives caucused. Early on, the union representatives arrived at the goal of obtaining a $10,000 payment from Defendant TCAT to

12

Plaintiff.  After discussion with Defendant David, Plaintiff agreed to accept $10,000.[10]

17.     Defendant TCAT's initial offer was $1,000.  With a view of securing $10,000, Defendant Local 2300 countered with a demand of $20,000.  As Commissioner Montani moved back and forth between the parties, the offer increased.  When Defendant TCAT's offer reached $9,000, Defendant David insisted that $10,000 was needed to secure a settlement, firmly telling Commissioner Montani that, if Defendant TCAT did not offer $10,000, the union would take the grievance to arbitration.[11]

18.     Defendant Local 2300's monetary demand was accepted by Defendant TCAT. Commissioner Montani had the parties meet and everyone shook hands on a tentative deal that would be reduced to writing.[12]

_____

[10]     Plaintiff denies that he ever agreed to settle his grievance for $10,000, citing his post-deposition affidavit submitted in opposition to the motions for summary judgment.  (Dkt. No. 122, Attach. 14, at ¶ 16 [Pl.'s Rule 7.1 Resp.].)  However, at his deposition, Plaintiff testified that "the mediator came in and said they said $10,000, and that's it, that's the end of it . . . . They're going to leave.  Jason David suggested, 'You better take that or you're going to walk out with nothing,'" and he felt he had "no choice" so he said he would accept that offer.  (Dkt. No. 122, Attach. 9, at 141 [dep. page 361].)  Plaintiff never corrected this portion of his deposition before submitting his affidavit.  Consequently, to the extent that Plaintiff now asserts in his affidavit that he never agreed to settle his grievance for $10,000, that portion of his affidavit may be disregarded as being inconsistent with his prior testimony.  *Hayes*, 84 F.3d at 619.

[11]     Plaintiff's denial of this asserted fact based on his assertion that Defendant David did not make these statements in his presence are non-responsive to the asserted fact, given that the asserted fact does not indicate specifically that these statements were made in Plaintiff's presence; additionally, at his deposition, Plaintiff testified that he could not recall hardly anything specific that Defendant Howells or Defendant David said during this mediation, noting only that he recalled that Defendant David "barely talked."  (Dkt. No. 122, Attach. 9, at 138-39 [dep. pages 352-53].)  This asserted fact is therefore deemed admitted.

[12]     Plaintiff denies the asserted fact.  (Dkt. No. 122, Attach. 14, at ¶ 21 [Pl.'s Rule 7.1 Resp.].)  The Court accepts this denial in part, but finds that Plaintiff has not sufficiently supported his denial related to his expressing agreement to a tentative deal, including a handshake; Plaintiff's cited affidavit does not state anything about a handshake and his

19.     The following day (January 27, 2017), Ms. Eccleston delivered a draft agreement to Defendant Howells and Plaintiff.  The proposed agreement was several pages and contained provisions that had not been specifically discussed during the mediation.  On the following Monday (January 30, 2017), Defendant David asked the union's lawyer to review the agreement and obtain any advisable modifications.

20.     Counsel for Defendants Local 2300 and TCAT negotiated several changes to the draft agreement that were approved by those parties; these included changes and/or new provisions concerning the release and waiver of claims, indemnification, unemployment insurance, references, and confidentiality.

21.     The revised draft was presented to Plaintiff on June 2, 2017, at Defendant Local 2300's offices.  Although Defendant David expected that Plaintiff would review the revised draft and sign it, Plaintiff said he wanted to have his lawyer review the revised draft and advise him. After a brief delay, Plaintiff was given this revised draft to review with his counsel.

22.     On or about June 13, 2017, Defendant David again met with Plaintiff (who was accompanied by Defendant Howells).  At that time, a third revised draft of the settlement agreement was presented to Plaintiff.  The changes sought were tracked and a separate page described those changes, which concerned three provisions: (a) broadening Plaintiff's re-employment rights; (b) making the release of claims mutual; and (c) requiring indemnification by Defendant TCAT.

23.     Defendant David forwarded the third revised draft to counsel and instructed him

---

categorical denial that he agreed to settle is contrary to his previous deposition testimony as discussed in note 10 of this Decision and Order.  The remainder of this asserted fact is therefore deemed admitted.

to obtain whatever was achievable through negotiating with Defendant TCAT's attorney. In late June, agreement on a fourth revised draft was reached. Defendant TCAT agreed to delete the restrictions on Plaintiff's ability to seek employment from entities "affiliated with" or "managed by" Defendant TCAT, but rejected the proposals to add a release of claims against Plaintiff or to require defense and indemnification of Plaintiff in connection with the pending wrongful death litigation.

24. On or about July 7, 2017, Defendant Local 2300 provided the fourth revised draft to Plaintiff.

25. On July 17, 2017, the Executive Board held its regularly scheduled monthly meeting at Local 2300's offices. Executive Board meetings are open to the entire union membership. Seven of the ten board members attended the meeting (Second Vice President Lesley Finch, Financial Secretary Ronda Park, Recording Secretary Steve Chupp, Trustee Ralph Moss, Sergeant-at-Arms Tim Park, Guide Chris Johnson, and President David). Three board members were absent (First Vice President Lois Martin Hulslander, and Trustees Keith Collins and Cathy Valentino). The question of whether to arbitrate the grievance related to Plaintiff's termination was placed on the agenda.

26. At the Executive Board meeting, Defendant David gave a lengthy and detailed explanation of the basis of the grievance and its processing to the board members; he described the accident, made available documents from the various investigations, and discussed the finding of the Accident Review Committee that the accident was preventable because Plaintiff had failed to observe the pedestrian. Defendant David noted that Defendant Howells–who Local 2300 had sent for specialized training in accident reconstruction–also agreed by the time of the

15

Executive Board meeting that the accident was preventable. Defendant David also stated that Plaintiff had not been issued tickets or been found to be at fault by police agencies that had investigated the accident. There was a discussion regarding the distinction between the at-fault standard applied by law enforcement and the preventability standard applied by Defendant TCAT and the bus industry.

27. The Executive Board was advised that a tentative agreement had been reached at the mediation and that, after prolonged negotiations, the parties had reached a final offer. Defendant David explained that the final draft of that offer was in Plaintiff's hands but it was not clear that he would sign it. Copies of the various drafts of the agreement and summaries of the changes that had been made were made available to the board members. The narrowing of the restriction on Plaintiff's re-employment was discussed. In his presentation, Defendant David did not make a recommendation on whether to submit the grievance to arbitration.

28. There was an extended discussion by the Executive Board. All of the board members were familiar with the location of the accident and no one disagreed with the finding that Plaintiff should have been able to see the pedestrian before striking her. A number of the members were concerned that an arbitration result upholding a discharge based on a single preventable accident could create a bad precedent for the TCAT bargaining unit.

29. Various board members stated their opinion that the arbitrator would likely rule in favor of Defendant TCAT (to which there was no disagreement), and there was discussion that Plaintiff should have been willing to sign the settlement agreement because it included the amount to which he had agreed at the arbitration. After several board members had expressed their opinions, Defendant David was asked his opinion; Defendant David acknowledged that he

16

agreed with the conclusion that the accident was preventable because Plaintiff should have seen the pedestrian, that he was very concerned about the risk of losing and creating a bad precedent, and that the still-pending settlement agreement gave Plaintiff the monetary payment to which he had agreed.

30.    Defendant TCAT had initially set a deadline of July 13, 2017, for the final draft of the settlement agreement to be signed; however, at Defendant Local 2300's request, that date was pushed to July 20, 2017.  On or about July 10, 2017, Defendant David communicated this new deadline to Plaintiff.

31.    On July 18, 2017, Defendant David telephoned Plaintiff and left a voicemail, advising him that the Executive Board had decided not to take his grievance to arbitration because of the availability of the settlement agreement and the risk of creating a bad precedent. In this message, Defendant David also reminded Plaintiff that the deadline to accept the settlement agreement was July 20, 2017, requested that Plaintiff let Defendant David know his intentions, and informed him that his attorney could contact the attorneys for Defendant Local 2300 or Defendant TCAT.

32.    Plaintiff did not contact Defendant Local 2300, so, through counsel, Defendant Local 2300 obtained a further extension until July 26, 2017.  On July 20, 2017, Defendant David sent a letter to Plaintiff advising him of the Executive Board's decision to withdraw the grievance and of the extension of the deadline; the letter further advised Plaintiff that his rights were defined in the UAW Constitution.  This letter was addressed to Plaintiff at the most-recent address he had provided the union (1820 Slaterville Road, Ithaca, New York 14850) and sent by certified mail.

33.     On July 25, 2017, that letter was returned to Defendant Local 2300 as undeliverable.  Defendant David called Plaintiff and left another voicemail message, explaining that the letter had been returned as undeliverable and notifying him that the deadline had been extended one last time to July 26, 2017.  Defendant David urged Plaintiff to contact him no later than the next morning because, according to Defendant TCAT, the offer would be withdrawn; he also reiterated that Plaintiff's attorney could contact the attorneys for either Defendant Local 2300 or Defendant TCAT.

34.     On or about August 8, 2017, Defendant David telephoned Plaintiff and left a voicemail message asking Plaintiff to contact him.  Plaintiff and Defendant David exchanged e-mails on August 10 and 11, 2017, with Plaintiff's e-mail of August 10, 2017, stating that he wanted greater compensation before he signed the agreement; this was the first time Plaintiff had said that the $10,000 payment was unacceptable.

35.     On August 14, 2017, Defendant David e-mailed Scot Vanderpool, TCAT's new General Manager, and asked if Defendant TCAT would be willing to re-offer the settlement agreement (which had expired on July 26, 2017) until August 17, 2017.  Later that day, Mr. Vanderpool replied that Defendant TCAT would give the union until August 17, 2017, to execute the settlement agreement.

36.     On or about August 15, 2017, Plaintiff notified Defendant David that he would not accept the settlement agreement.  In his e-mail reply to Plaintiff on August 16, 2017, Defendant David (a) confirmed that the union would not be proceeding to arbitration on the grievance, and (b) advised Plaintiff that "all your rights are outlined in the International UAW Constitution."  On August 18, 2017, Defendant David advised Defendant TCAT that Defendant

Local 2300 was officially withdrawing the grievance.[13]

37.     Plaintiff did not submit an appeal under the bylaws of Local 2300 or the UAW Constitution before commencing the present action against Defendant Local 2300.

38.     The UAW appeals procedure has been mentioned in Defendant Local 2300's monthly newspaper, *The Bear Facts.*[14]

39.     In May 2017, Defendant David held a "Town Hall" meeting at the Tompkins County Public Library that was broadcast on Defendant Local 2300's Facebook page.  The subject of the meeting was "member rights and responsibilities," which included a presentation and interactive questions on the UAW Constitution, the Local 2300 bylaws, and the appeals process.[15]

40.     For many years, including the duration of Plaintiff's employment with Defendant TCAT, *The Bear Facts* was mailed to each member's residence.  In October 2017, the

---

[13]     Plaintiff denies that he received an e-mail from Defendant David stating that his rights were outlined in the UAW Constitution, citing his affidavit submitted in opposition to Defendants' motions for summary judgment.  (Dkt. No. 122, Attach. 14, at ¶ 40 [Pl.'s Rule 7.1 Resp.].)  However, any such statements in Plaintiff's affidavit are inconsistent with his prior deposition testimony, in which he expressly acknowledged (a) receiving and reading the relevant e-mail and (b) that the e-mail contained the cited reference to the UAW Constitution, although did not pay attention to that reference and did not investigate the UAW Constitution following receipt of that e-mail.  (Dkt. No. 122, Attach. 9, at 156 [dep. pages 421-22], 163 [dep. page 449].)  Consequently, to the extent that Plaintiff now asserts that he either did not receive this e-mail or that it did not contain the reference to the UAW Constitution, that portion of his affidavit may be disregarded as being inconsistent with his prior testimony.  *Hayes*, 84 F.3d at 619.

[14]     Plaintiff's denial asserting that he never received this publication is not responsive to the asserted fact.  (Dkt. No. 122, Attach. 14, at ¶ 42 [Pl.'s Rule 7.1 Resp.].)  This asserted fact is deemed admitted.

[15]     As discussed in note 14 of this Decision and Order, Plaintiff's assertion that he was unaware of this presentation is not responsive to the asserted fact.  (Dkt. No. 122, Attach. 14, at ¶ 43 [Pl.'s Rule 7.1 Resp.].)  This asserted fact is deemed admitted.

distribution was changed primarily to e-mail, with the option to continue to receive the magazine by regular mail; the change was announced repeatedly in issues of *The Bear Facts*. Starting in April 2017, members were notified that the default delivery method was being changed to their e-mail address on file, but members could notify the union if they wished to continue to receive it by regular mail.

41.     The UAW Constitution is and has been posted on the UAW's website. The appeals procedure set forth in Article 33 of the UAW Constitution has been the repeated subject of articles in the UAW's magazine, *Solidarity*, including in the September-October 2016 and July-August 2017 issues. *Solidarity* is published six times per year and is posted online on the UAW's website; members can also receive *Solidarity* by e-mail. For many years, until 2014, it was distributed by regular mail to all UAW members.[16]

### E.     Parties' Briefing on the Motions for Summary Judgment

#### 1.     Plaintiff's Motion for Partial Summary Judgment

Generally, in his motion for partial summary judgment, Plaintiff asserts two arguments. (Dkt. No. 89, at 18-19 [Pl.'s Mem. of Law].) First, Plaintiff argues that he is entitled to a finding that the accident which was the basis of his termination was not preventable, contrary to the findings of Defendant TCAT's Accident Review Committee. (*Id.* at 18.) More specifically, Plaintiff argues that he did perform the "rock and roll" procedure while making the turn and that there is no evidence that he failed to perform that procedure because (a) no representative from Defendant TCAT or Defendant Local 2300 were on the bus or witnessed his actions during the

---

[16]     Plaintiff's denial of this asserted fact is insufficient and non-responsive for reasons already discussed related to *The Bear Facts* in note 14 of this Decision and Order.

accident, (b) the bus' camera was not enabled on the day of the accident and thus there is no

video of his actions during the accident, and (c) there are no other witnesses who have indicated

that he failed to perform that procedure during the accident. (*Id.*)

Second, Plaintiff argues that he is entitled to summary judgment on his Second Claim for

breach of the CBA against Defendant TCAT for two reasons: (a) the accident was not

preventable and thus Defendant TCAT did not have cause to terminate his employment as

required under the CBA; and (b) Defendant TCAT failed to engage in progressive discipline

when it fired him for a single accident without first subjecting him to warnings or suspensions as

required by the CBA. (*Id.* at 19.)

### 2. Defendant TCAT's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment

Generally, in its cross-motion for summary judgment, Defendant TCAT asserts three

arguments. (Dkt. No. 115, Attach. 23, at 13-31 [Def. TCAT's Mem. of Law].) First, Defendant

TCAT argues that Plaintiff's motion for summary judgment violates the District's Local Rules of

Practice because he has failed to cite record evidence in support of any of the asserted facts in his

required Statement of Material Facts. (*Id.* at 13-14.)

Second, Defendant TCAT argues that Plaintiff's hybrid claim for breach of the duty of

fair representation and breach of the CBA must be dismissed because the evidence does not

support a reasonable finding either that Defendant TCAT breached the CBA or that the Union

Defendants breached the duty of fair representation. (*Id.* at 14-27.) As to the claim against itself

for breach of the CBA, Defendant TCAT makes the following five arguments: (a) the CBA

allows for termination of employment for just cause, and Defendant TCAT had just cause to

terminate Plaintiff's employment based on the finding that the accident was preventable because Plaintiff failed to utilize defensive driving procedures in which he had been trained; (b) the preventability finding is supported by the Accident Review Committee's own investigation using New York State and Federal guidelines, testimony from two passengers on the bus at the time of the accident, and the PTSB report; (c) preventability (rather than fault) was the appropriate standard for assessing whether there was cause to terminate Plaintiff's employment because Plaintiff is a professional driver and Defendant TCAT is permitted to hold him to a higher standard as such; (d) Plaintiff's recent assertions that he performed the "rock and roll" procedure should not be credited because they are inconsistent with his past statements in the record; and (e) Defendant TCAT was not required to engage in the progressive discipline outlined in the CBA because Plaintiff's accident (i.e., killing a pedestrian) was a major infraction that merited exemption from progressive discipline. (*Id.* at 15-22.) As to the claim against the Union Defendants, Defendant TCAT argues that Plaintiff has not shown a breach of the duty of fair representation because it is undisputed that the Union Defendants represented him in an effort to resolve the grievance with Defendant TCAT, that they continued to represent him until he refused to sign the settlement agreement negotiated by the union and Defendant TCAT, and that they had valid reasons for declining to take the grievance to arbitration including the lack of evidence that Plaintiff had performed the "rock and roll" procedure and worries about weakening the Union's position on future grievances with Defendant TCAT. (*Id.* at 22-27.)

Third, Defendant TCAT argues that Plaintiff cannot succeed on his claim against the Union Defendants because he failed to exhaust the internal union appeal procedure before filing this lawsuit. (*Id.* at 27-31.) More specifically, Defendant TCAT argues that the Court should

find that such failure to exhaust bars Plaintiff's claim because (a) he was aware of the appeal procedure (which is specifically referenced in the CBA), (b) that procedure is not cumbersome or confusing given that the Union Constitution gives specific examples of the typical appeal process, (c) appeal would not have been futile or inadequate because it could have resulted in reinstatement of his grievance and because he has not demonstrated that he would have been unable to receive a fair hearing at every step of the appeal process, and (d) the evidence shows that he would not have suffered an unreasonable delay in the resolution of his grievance had he used the appeal process.  (*Id.*)

### 3.     The Union Defendants' Motion for Summary Judgment

Generally, in their motion for summary judgment, the Union Defendants assert three arguments.  (Dkt. No. 117, Attach. 24, at 18-32 [Union Defs.' Mem. of Law].)  First, the Union Defendants argue that Plaintiff's claim against them is barred because Plaintiff failed to exhaust his appeal remedies under the UAW Constitution before filing this lawsuit.  (*Id.* at 18-26.)  More specifically, the Union Defendants argue as follows: (a) Plaintiff has failed to show that there would be hostility against him at every step of the internal appeal process; (b) the appeal process provides an adequate remedy because it could have resulted in the reinstatement of the grievance; (c) invoking the internal appeal procedure would not have resulted in an unreasonable delay because other courts have found that the UAW procedures satisfy this standard and he could have gone through two levels of that process in the time he filed this federal court action; and (d) Plaintiff's professed ignorance of the appeals process does not preclude requiring exhaustion because Defendant David informed him that his rights were in the UAW Constitution, he admitted he did not research those rights, the UAW Constitutional is publically and easily

accessible, Plaintiff had access to Local 2300's bylaws, the appeals process has been discussed in publications sent to members by both the International and Local Union, and Defendant Local 2300 has held a Town Hall meeting on the appeals process. (*Id.*)

Second, the Union Defendants argue that Plaintiff cannot establish that they breached the duty of fair representation because (a) they filed a grievance challenging Plaintiff's termination and pursued that grievance through negotiations, mediation, and settlement discussions, and (b) Local 2300's Executive Board had valid reasons for choosing not to take the grievance to arbitration, including that they believed the accident was likely preventable, that the settlement obtained was fair, and that there was a risk of detriment to other members of the bargaining unit in future grievances if they continued to push on this particular grievance. (*Id.* at 26-30.)

Third, the Union Defendants argue that Plaintiff cannot establish that Defendant TCAT breached the CBA. (*Id.* at 30-32.) More specifically, the Union Defendants argue as follows: (a) Plaintiff's new testimony that he performed the required defensive driving procedure contradicts previous statements and evidence; (b) there was no requirement for Defendant TCAT to engage in progressive discipline before terminating Plaintiff's employment because of the serious nature of his infraction; and (c) there is no genuine dispute of material fact that the accident was preventable or that Defendant TCAT had just cause to terminate Plaintiff's employment. (*Id.*)

### 4. Plaintiff's Consolidated Opposition to Defendants' Motions and Reply Memorandum of Law

Generally, in consolidated opposition and reply, Plaintiff asserts four arguments. (Dkt. No. 122, at 6-26 [Pl.'s Opp'n Mem. of Law].) First, Plaintiff argues that he has demonstrated an absence of just cause for his termination because (a) the findings of the Accident Review

Committee on which Defendant TCAT relied are unsupported by the evidence, (b) Defendant

TCAT misrepresented the findings of the Department of Motor Vehicles related to the accident,

(c) his prior testimony is not inconsistent with his assertion that he undertook all required

defensive driving procedures at the time of the accident, (d) Defendant TCAT's argument that

the mere fact that the accident occurred is evidence that he failed to drive properly is

disingenuous and speculative, (e) Defendant TCAT's findings ignored the evidence of a defect in

the bus' mirror that made him unable to see the pedestrian, and (f) he met even the higher

standard applicable to professional drivers.  (*Id.* at 6-17.)

Second, Plaintiff argues that Defendant TCAT breached the CBA in that it (a) failed to

ensure that there was an International Representative at the Step 3 meeting as required by the

CBA, and (b) failed to undertake progressive discipline as outlined in the CBA because the CBA

does not allow for direct termination (without progressive discipline) where an employee has had

only one preventable accident.  (*Id.* at 17-20.)

Third, Plaintiff argues that his claim against the Union Defendants should not be found to

be subject to any exhaustion requirements for the following six reasons: (a) the UAW

Constitution is ambiguous as to whether exhaustion is actually required; (b) he was unaware of

his right to appeal internally because the Union Defendants never apprised him of those rights

and his counsel at the time was representing him only as to the proposed settlement and related

matters, not as to an appeal; (c) Defendant Howells not only did not inform Plaintiff that he had

internal appeal rights, but also encouraged him to pursue his complaint with the National Labor

Relations Board ("NLRB") instead; (d) Local 2300 officials were hostile to him, as evidenced by

their bad-faith and negligent actions; (e) the remedy available is inadequate because the hostile

environment following his termination made reinstatement not a viable option; and (f) seeking

relief through the internal appeal process would cause an unreasonable delay because the

multiple levels of appeals would take "many months if not years" and such appeals would be

costly to the working-class appellant.  (*Id.* at 20-25.)

Fourth, Plaintiff argues that the Union Defendants are not entitled to summary judgment

on his duty-of-fair-representation claim because they engaged in bad-faith conduct by lying to

him about arbitration and not telling him about his internal appeal rights in order to prevent him

from having any avenue for relief.  (*Id.* at 25-26.)

### 5. Defendant TCAT's Reply Memorandum of Law

Generally, in its reply memorandum of law, Defendant TCAT asserts four arguments.

(Dkt. No. 123, at 4-13 [Def. TCAT's Reply Mem. of Law].)  First, Defendant TCAT argues that

Plaintiff's opposition to its Statement of Material Facts is deficient and contrary to the District's

Local Rules of Practice.  (*Id.* at 4.)

Second, Defendant TCAT argues that Plaintiff has failed to establish that it breached the

CBA.  (*Id.* at 5-12.)  More specifically, Defendant TCAT argues as follows: (a) it was not

required to apply a fault standard, and thus findings by agencies that Plaintiff had not violated

any traffic law or was not otherwise at legal fault for the accident do not conflict with Defendant

TCAT's finding that the accident was preventable (which is a higher standard); (b) Plaintiff has

failed to provide any evidence to create a genuine dispute of material fact as to whether the

accident was preventable; (c) the language in the CBA regarding progressive discipline is not

ambiguous and not amenable to the interpretation that Plaintiff has put forth; and (d) the Union

Defendants' failure to ensure that an International Representative was present at the Step 3

meeting does not constitute a breach by Defendant TCAT.  (*Id.*)

Third, Defendant TCAT argues that Plaintiff has failed to demonstrate that the Union Defendants breached their duty of fair representation because he has failed to produce any evidence of hostility or bad faith.  (*Id.* at 12.)

Fourth, Defendant TCAT argues that Plaintiff's failure to exhaust internal appeal options should not be excused because he has admitted in his deposition testimony that he received the e-mail from Defendant David in which he was informed that his rights were outlined in the UAW Constitution, regardless of what he now asserts to the contrary.  (*Id.* at 12-13.)

### 6.    The Union Defendants' Reply Memorandum of Law

Generally, in their reply memorandum of law, the Union Defendants assert two arguments.  (Dkt. No. 125, at 6-14 [Union Defs.' Reply Mem. of Law].)  First, the Union Defendants argue that Plaintiff has failed to show that he should be exempted from the exhaustion requirement because (a) he has presented no evidence that his counsel should not have, or did not, advise him on appeal issues, (b) evidence substantiates a finding that Plaintiff received the e-mail from Defendant David in which he was informed that his rights were outlined in the UAW Constitution, (c) the evidence does not support Plaintiff's contention that Defendant Howells told him to file a complaint with the NLRB in place of any appeal, (d) Plaintiff has not adduced evidence of hostility at all steps of the internal appeal process, (e) there is no basis for Plaintiff's argument that an internal appeal would have unreasonably delayed his ability to seek a judicial hearing because his appeal would have been heard at the membership meeting following his filing of an appeal and he could have appealed any denial of that appeal to the International Executive Board prior to the time he chose to file this civil action, and (f) the UAW Constitution

is not ambiguous on the issue of exhaustion. (*Id.* at 6-11.)

Second, the Union Defendants argue that Plaintiff has failed to create any genuine dispute of material fact as to the duty-of-fair-representation claim because (a) Defendant David never made an unconditional promise to take the grievance to arbitration and, in any event, Plaintiff was not injured by any such statements because Defendant David did not make the decision not to arbitrate, (b) the decision of whether to arbitrate a grievance is within a union's discretion and the Court should not second-guess that decision where, as here, there were legitimate reasons for that decision, and (c) there is no evidence that any bias or hostility on the part of Defendant David impacted the Executive Board's decision not to pursue arbitration. (*Id.* at 11-14.)

## II. GOVERNING LEGAL STANDARDS

### A. Legal Standards Governing Motions for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[17] As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all

_____

[17]    As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted]. As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255.

In addition, "[the movant] bears the initial responsibility of informing the district court of the

basis for its motion, and identifying those portions of the . . . [record] which it believes

demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S.

317, 323-24 (1986). However, when the movant has met its initial burden, the non-movant must

come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ.

P. 56(a), (c), (e).[18]

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant

willfully fails to respond to a motion for summary judgment, a district court has no duty to

perform an independent review of the record to find proof of a factual dispute.[19]

Of course, when a non-movant willfully fails to respond to a motion for summary

judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that

the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).

Rather, as indicated above, the Court must assure itself that, based on the undisputed material

facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v.

Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.);

N.D.N.Y. L.R. 7.1(b)(3). What the non-movant's failure to respond to the motion does is lighten

the movant's burden.

---

[18]     Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a
response to the movant's Statement of Material Facts, which admits or denies each of the
movant's factual assertions in matching number paragraphs, and supports any denials with a
specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 7.1(a)(3).

[19]     *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 426 & n.2 (N.D.N.Y. 209) (Suddaby,
J.) (citing cases).

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement.

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[20] Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

### B. Legal Standards Governing Hybrid Breach-of-CBA/Breach-of-Duty-of-Fair-Representation Claims

A suit that alleges claims both that the employer breached the CBA and that the union

---

[20]     *See*, *e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

breached its duty of fair representation is known as a hybrid Section 301/fair representation claim that consists of two interdependent causes of action. *Roy v. Buffalo Philharmonic Orchestra*, 682 F. App'x 42, 44 (2d Cir. 2017). To prevail on a hybrid Section 301/fair representation claim, "the plaintiff must prove '(1) that the employer breached the collective bargaining agreement and (2) that the union breached its duty of fair representation vis-a-vis the union members.'" *Pathania v. Metro. Museum of Art*, 563 F. App'x 42, 43 (2d Cir. 2014). In other words, in order to prevail against either his employer or his union, a plaintiff "must not only show that [his] discharge was contrary to the contract but must also carry the burden of demonstrating breach of the duty by the Union." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 165 (1983).

In considering such a hybrid cause of action, "the union's breach of its duty of fair representation is a prerequisite to consideration of the merits of the employee's claim against the employer." *Stadler v. United Parcel Serv., Inc.*, 89-CV-1025, 1992 WL 193685, at *3 (W.D.N.Y. July 15, 1992) (citing *United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 62 [1981]). "A union breaches its duty of fair representation when its conduct towards its members is arbitrary, discriminatory, or undertaken in bad faith," and that wrongful conduct is causally connected to the plaintiff's injuries. *Pathania*, 563 F. App'x at 44. Judicial review of a union's actions "must be highly deferential, recognizing the wide latitude that [unions] need for the effective performance of their bargaining responsibilities." *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998).

III.  **ANALYSIS**

A.  **Whether Plaintiff Has Created a Genuine Dispute of Material Fact as to Whether the Union Defendants Breached Their Duty of Fair Representation**

After careful consideration, the Court answers this question in the negative for the reasons stated in Defendants' memoranda of law. *See, supra,* Part I.E. of this Decision and Order. To those reasons, the Court adds the following analysis.

As an initial matter, Defendants argue that the Court should not even consider the merits of Plaintiff's claim against the Union Defendants because he has failed to exhaust his remedies before filing a lawsuit, as required by the UAW Constitution. Article 33, Section 5 of the UAW Constitution, which is titled "Obligation to Exhaust Internal Union Remedies," states that "[i]t shall be the duty of any individual or body, if aggrieved by any action, decision, or penalty imposed, to exhaust fully the individual or body's remedy and all appeals under this Constitution and the rules of this Union before going to a civil court or governmental agency for redress." (Dkt. No. 117, Attach. 19, at 49 [UAW Constitution].) Despite this clear and unambiguous statement that an aggrieved union member must exhaust all available appeals under the UAW Constitution before filing a civil action, Plaintiff nonetheless argues that the UAW Constitution is ambiguous because Section 1 of Article 33 states that a member "shall have the right" to appeal, arguing that this permissive language suggests that appeal is not mandatory and thus exhaustion is not required. (Dkt. No. 122, at 23-24 [Pl.'s Opp'n Mem. of Law].) This argument barely merits discussion because no reasonable person could come to the interpretation of the contract now put forth by Plaintiff. The mere fact that the UAW Constitution permits appeals in no way renders ambiguous the subsequent express requirement of exhaustion; if a grievant chooses not to exercise the appeal right granted in Section 1, he simply is also choosing to forego his ability to file a civil action by virtue of Section 5. The Court therefore finds that the UAW Constitution unambiguously requires exhaustion of internal appeals as a prerequisite to the filing

of a civil action. As a result, the Court must determine whether it should exercise its discretion to require such exhaustion.

As the parties have noted, the Supreme Court has outlined three factors to consider when determining whether to require exhaustion of internal union procedures: (1) "whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim"; (2) "whether the internal union appeals procedure would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks'"; and (3) "whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim." *Clayton v. Int'l Union, UAW*, 451 U.S. 679, 689 (1981). "If any of these factors are found to exist, the court may properly excuse the employee's failure to exhaust." *Clayton*, 451 U.S. at 689. The union bears the burden of establishing that its appeal procedures merit the application of exhaustion. *Maddalone v. Local 17, United Bhd. of Carpenters and Joiners of America*, 152 F.3d 178, 186 (2d Cir. 1998).

As to the first factor, there is no evidence to establish that Plaintiff would have been unable to receive a fair hearing on his claim due to hostility by the union officials. The appeals process beyond the Local Executive Board includes decisions by the International Executive Board and either the Convention Appeals Committee or the Public Review Board (both of which are part of the International UAW). (Dkt. No. 117, Attach. 19, at 45 [UAW Constitution].) Although Plaintiff has alleged and attempted to provide evidence to support a finding that officials of Defendant Local 2300 (including Defendant David and Defendant Howells) were hostile toward him, the Court finds that (a) the evidence as a whole does not establish hostility even at the Local level given the undisputed fact that Defendant David was not involved in

voting on the Executive Board's decision and there is no admissible evidence of hostility by any voting member of the Executive Board, and (b) there is no admissible evidence to even suggest that any member of the International UAW bodies who would have heard Plaintiff's internal appeals were hostile to him for any reason. *Lazzaro v. Int'l Union, UAW, Local Union 1826*, 02-CV-1452, 2005 WL 1147797, at *4 (N.D.N.Y. May 16, 2005) (McCurn, J.) (noting that "hostility at the local level is not enough to excuse exhaustion and, in order to be excused from exhausting intra-union remedies, a member must establish hostility at every step of the [appeal]"). Because there is no evidence of hostility at either the Local or International levels, this first factor supports requiring exhaustion.[21]

As to the second factor, the Court finds that the appeal procedure was adequate in that it could have resulted in the reinstatement of the grievance. Plaintiff's argument on this matter shows that there is no actual dispute as to whether the Union Defendants have demonstrated this factor: Plaintiff argues merely that, because of the alleged hostile environment following his termination, reinstatement, while admittedly available, was not a viable option for him. (Dkt. No. 122, at 22 [Pl.'s Opp'n Mem. of Law].) However, *Clayton* does not require that the reinstatement of a grievance result in a favorable outcome for the plaintiff (e.g., successful reinstatement of employment in a non-hostile work environment), but merely that the appeal process has the potential to resurrect the grievance itself. Plaintiff admits that reinstatement of the grievance was an available remedy under the internal appeals process. (Dkt. No. 122, at 22 [Pl.'s Opp'n Mem. of Law] ["The only remedy available to him through the internal appeals

---

[21] Plaintiff's arguments that the alleged bad-faith actions of Defendant David and Defendant Howells establish hostility will be discussed in greater detail below, when the Court addresses the merits of that claim.

34

process was reinstatement."].)  Additionally, the CBA states that, when any of the relevant International UAW appeal boards finds an error in the Local's handling of a grievance, it can inform Defendant TCAT's Human Resources Manager that the grievance is reinstated.  (Dkt. No. 122, Attach. 7, at 36 [CBA].)  The Court finds there is therefore no genuine dispute that the appeal procedure had the potential to reactivate the dismissed grievance; and this factor also supports requiring exhaustion.

As to the third and final factor, the Court finds that the Union Defendants have not met their burden to show that requiring Plaintiff to utilize the internal appeals in this case could not have resulted in unreasonable delay.  First, the Union Defendants recognize that Plaintiff had until mid-September (or even mid-October, depending on when the time limitation began to run) to file an appeal, yet assume that any appeal would have been heard (and apparently promptly decided) by the membership in September 2017; however, the Union Defendants have not pointed to evidence showing that (a) the September 2017 membership meeting would have been held after mid-September such that an appeal filed at that time would be heard at the September 2017 meeting, or (b) that the union would decide the appeal promptly at the meeting or merely consider the arguments at the meeting and issue a decision at a later date.

Second, the Union Defendants' arguments address only the timeliness of the first level of appeal (i.e., to the membership of Local 2300); they make no arguments as to how long the remaining levels of appeal would have taken.  The affidavit of Ms. Farrell, the International Representative for Local 2300, states that the specific process Plaintiff was required to follow under the UAW Constitution was (a) an initial appeal to the membership of Local 2300, (b) if that appeal was unsuccessful, an appeal to the International Board, and (c) if that appeal was

35

unsuccessful, an appeal to either the Convention Appeals Committee or the Public Review

Board. (Dkt. No. 117, Attach. 18, at ¶¶ 9-10 [Farrell Aff.].) The Court notes that, although the

UAW Constitution indicates the time limits for filing an appeal to each level, it does not specify

what the time frame is for the actual consideration of those appeals in these later stages of appeal

to the International UAW bodies. (Dkt. No. 117, Attach. 19, at 46-49 [UAW Constitution].)

Because the UAW Constitution requires an appellant to exhaust fully *all appeals* provided for

under the UAW Constitution, without any evidence related to the length of time it would take to

complete all of the provided-for levels of appeal, the Court cannot say, based on the current

record, that, as a matter of law, the internal appeals process would not have unreasonably delayed

Plaintiff's ability to receive a judicial hearing on his claims.[22] The Union Defendants' argument

that Plaintiff could have filed a second-level appeal and obtained a result on that appeal by the

date he filed his Complaint in this action (and thus could have pursued his internal appeal

remedies without an unreasonable delay) is both speculative and still does not account for the

possibility that Plaintiff's hypothetical second-level appeal could have been denied, necessitating

a further third-level appeal. The Union Defendants simply have not adduced any

admissible evidence to establish that the delay caused by pursuing an internal appeal would have

_____

[22] The Court notes that it disagrees with the Union Defendants to the extent that they are intending to argue that quoted language in the CBA suggests that the appeals process must be concluded within 90 days after the "process" is initiated. (Dkt. No. 117, Attach. 19, at 23 [Union Defs.' Mem. of Law].). At the very least, the language in this portion of the CBA is ambiguous and therefore does not stand as sufficient evidence of the time frame of an appeal through all the relevant steps of the process necessary to support the Union Defendants' arguments that an appeal would not have caused unreasonable delay.

been four months or less (the range that was found to be reasonable in *Clayton*).[23]  *See Clayton*,

451 U.S. at 702-03 (pointing to 29 U.S.C. § 411[a][4] in finding that Congress intended four

months or less to constitute a reasonable amount of time to conduct internal appeals before the

allowance of a civil suit).  As a result, the Court finds that the Union Defendants have not met

their burden to show that requiring the internal appeals process would not result in unreasonable

delay.  Thus, the Court finds that it should exercise its discretion to consider Plaintiff's claims

despite his failure to exhaust the internal appeal process.

       Turning to the merits of Plaintiff's claim, the Court finds that Plaintiff has failed to create

---

[23]     Along with their reply memorandum of law, the Union Defendants have submitted evidence of an appeal made by the former First Vice President of Defendant Local 2300 related to her removal from the Executive Board, noting that this appeal (which went up to a decision by the International Executive Board) was finished in less than four months.  (Dkt. No. 125, Attach. 3, at ¶ 9 [David Reply Aff.].)  However, this other appeal does not bolster the Union Defendants' argument.  As already discussed, the International Executive Board is not the final level of appeal outlined in the UAW Constitution, and the UAW Constitution explicitly requires that *all* appeals be taken before filing in a civil court.  The fact that it took three months and 22 days between the date that appellant filed her appeal to the Local membership and the date the International Executive Board rendered its opinion does not sufficiently indicate that a full course of appeal from the Local through either the Convention Appeals Committee or the Public Review Board would be completed within a time that would not unreasonably delay the ability to seek judicial relief; notably, in the example provided by the Union Defendants, any hypothetical appeal to the Convention Appeals Committee or the Public Review Board would have to occur within nine days or less to prevent the whole process from going beyond the four-month period allowed by *Clayton,* an outcome that appears to be highly unlikely given the amount of time it took the International Executive Board to render its decision.  In particular, the Court notes that it took approximately three months for the International Executive Board to render a determination from the time that appellant filed her appeal with it.  (Dkt. No. 125, Attach. 3, at ¶ 9 [David Reply Aff.] [noting that appellant appealed to the International Executive Board on October 18, 2017, and the decision was rendered on January 9, 2018].)  The Union Defendants have offered no evidence to show that (a) this length of time was not typical and (b) that it would not have taken the same amount of time or longer (i.e., an additional three months after the International Executive Board's decision) for either the Convention Appeals Committee or the Public Review Board to render their decision if the appeal needed to be taken to them, nor have Defendants cited any legal support to contend that this potentially seven-month appeal process would not be an unreasonable delay.

a genuine dispute of fact as to his claim against the Union Defendants for breach of the duty of fair representation. To the extent that Plaintiff may argue that the Union Defendants' actions in failing to take the grievance to arbitration were arbitrary, the Court finds those arguments unpersuasive. According to the Supreme Court, "a union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' . . . as to be irrational." *Air Line Pilots Ass'n, Int'l. v. O'Neill*, 499 U.S. 65, 67 (1991). It is undisputed that the Union Defendants provided multiple, facially valid reasons for declining to take the grievance to arbitration, including worries about receiving an unfavorable decision and the effects that such an unfavorable decision could have on future bargaining and grievance negotiations with Defendant TCAT. Based on the current record, the Court cannot say that the Executive Board's decision not to pursue the grievance to arbitration following the Step 3 denial was so far outside the range of reasonableness as to be irrational. *See Spellacy*, 156 F.3d at 128 (noting that "[w]hile a union may not arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion, union members do not have an absolute right to have their grievances taken to arbitration") (internal marks omitted).

As to Plaintiff's argument that the Executive Board's decision not to take the grievance to arbitration was based on Defendant David's discriminatory motives, the Court finds two reasons that this argument fails to defeat a motion for summary judgment. First, it is undisputed that it was the Executive Board (and not Defendant David) who made the decision not to arbitrate the grievance, and that Defendant David did not vote as part of that decision.

Second, Plaintiff has not adduced any admissible evidence of the discriminatory motive he alleges. In particular, Plaintiff has not provided the Court with the posts from Defendant

David's Facebook page that he asserts are evidence of Defendant David's anti-immigrant bias or any other evidence to support his assertions that Defendant David acted contrary to Plaintiff's interests because of Plaintiff's skin color, immigration status, or Guatemalan heritage.  The Court notes in particular that, at his deposition, Plaintiff testified that his assertions that Defendant David's dislike of him was based on his race or national origin stemmed from his own feelings when interacting with Defendant David, Defendant David's unfriendly manner to him, and other employees talking in the lunchroom about the way Defendant David "referred to minorities" (although, when asked how Defendant David referred to minorities, Plaintiff could not recall any examples or details).  (Dkt. No. 122, Attach. 9, at 158-59 [dep. pages 431-35].)  Plaintiff's subjective feelings and vague references to unspecified lunchroom talk about Defendant David's opinion of minorities are insufficient to create a genuine dispute of material fact or to allow a reasonable factfinder to conclude that Defendant David harbored an improper discriminatory motive that had a causal connection to the decision not to take the grievance to arbitration or to any other action taken by Defendant David or other relevant members of Defendant Local 2300. *See Shalom v. Huner Coll. of City Univ. of New York*, 13-CV-4667, 2014 WL 3955167, at *6 (S.D.N.Y. Aug. 13, 2014) (finding that the plaintiff's subjective feelings of offense to the defendant's statements were insufficient to show that sex-neutral statements had a discriminatory motive).

As to Plaintiff's arguments that the Union Defendants otherwise acted in bad faith, Plaintiff has similarly failed to adduce admissible evidence sufficient from which a reasonable factfinder could reach such a conclusion.  In addition to arguing that the Union Defendants acted in bad faith by failing to take the grievance to arbitration, Plaintiff argues that the Union

Defendants acted in bad faith by failing to apprise him of his right to appeal the denial of the grievance, by Defendant David's "promises" that the Union would take the grievance to arbitration if the settlement did not work out, and by Defendant Howell's alleged actions in advising him to take his case to the NLRB rather than taking an internal appeal in an effort to prevent him from having a remedy in this Court.

"A union acts in bad faith when it acts with an improper intent, purpose, or motive," including "fraud, dishonesty, or other intentionally misleading conduct"; however, "[t]actical decisions and mere negligence do not amount to bad faith." *Greene v. St. Barnabas Hosp.*, 727 F. App'x 21, 24 (2d Cir. 2018). "As long as the union acts in good faith, the courts cannot intercede on behalf of employees who may be prejudiced by rationally founded decisions that operate to their particular disadvantage." *Barr v. United Parcel Serv., Inc.*, 868 F.3d 36, 43-44 (2d Cir. 1989).

As discussed previously, the Executive Board had specific, articulable reasons for choosing not to take the grievance to arbitration (including that it believed that evidence strongly suggested that the accident was preventable and therefore arbitration would likely not result in a favorable outcome), and there is no evidence to support Plaintiff's conclusory contention that those reasons were pretextual or otherwise masking an improper motive. As a result, Plaintiff has not created a genuine dispute of material fact as to whether the decision not to arbitrate the grievance was taken in bad faith. *See Szarka v. Reynolds Metals Co.*, 17 F. Supp. 2d 115, 125-26 (N.D.N.Y. 1998) (McAvoy, C.J.) (finding no breach of the duty of fair representation as a result of the union's failure to take a grievance to arbitration because the CBA did not require arbitration for all grievances and the union had submitted affidavits stating that it believed that

the plaintiff's grievance was without merit); *see also Wilder v. GL Bus Lines*, 99-CV-9992, 2000 WL 959751, at *11 (S.D.N.Y. July 11, 2000) (finding that the union "did not act unreasonably or in bad faith in considering and concluding not to arbitrate what it deemed to be a meritless grievance) (vacated in part on other grounds).

Similarly, Plaintiff has offered no admissible evidence that the failure to apprise him specifically of his appeal rights in the UAW Constitution was an intentional fraudulent, dishonest, or misleading act. Rather, it is undisputed that Defendant David initially sent Plaintiff a letter to the address on file to inform him that Defendant Local 2300 would not be taking the grievance to arbitration and to inform him that his rights were outlined in the UAW Constitution; when this letter was returned as undeliverable, Defendant David contacted Plaintiff by telephone (Plaintiff acknowledges he received Defendant David's voicemail messages), and Defendant David subsequently sent Plaintiff an e-mail containing the same statement about his rights being outlined in the UAW Constitution, which Plaintiff has acknowledged receiving and reading. Plaintiff testified at his deposition that he made no effort to investigate the UAW Constitution following this email. The fact that the Union Defendants may have negligently assumed that Plaintiff was familiar with the UAW Constitution or negligently failed to provide him with more detail about his appeal rights as contained in the UAW Constitution does not, without further evidence of an improper motive, transform the Union Defendants' possible negligence into bad faith. Additionally, Defendant Howells testified at his deposition that he did not advise Plaintiff of his right to appeal through the internal process in the UAW Constitution because he believed that such an appeal would be untimely at that point based on the information that he had. (Dkt. No. 122, Attach. 2, at 121-22 [Howells Dep.].) Any such negligence in failing to determine

41

whether or not an appeal was actually untimely when choosing not to discuss internal appeal rights with Plaintiff similarly does not rise to the level of bad faith.

Plaintiff also argues that Defendant David acted in bad faith by "repeatedly [lying] to [him] about the Union's intentions to pursue his grievance," even going so far as to state in his affidavit submitted in opposition to Defendants' motions for summary judgment that "[Defendant] David repeatedly promised me that if the grievance was not settled to my satisfaction, the Union would take the grievance to arbitration." (Dkt. No. 122, at 26 [Pl.'s Opp'n Mem. of Law]; Dkt. No. 122, Attach. 8, at ¶ 35 [Pl.'s Aff.].) However, Plaintiff's affidavit is somewhat inconsistent with his previous deposition testimony in that the detailed deposition testimony does not establish that such an unequivocal promise that arbitration was guaranteed. Plaintiff testified that one of these statements occurred during a meeting between Plaintiff, Defendant David, and Defendant Howells in which changes to the proposed settlement agreement were presented; Defendant Howells stated that "we're not going to sign it like that," to which Defendant David responded, "[w]ell, if nothing happens, we're going to arbitration." (Dkt. No. 122, Attach. 9, at 142 [dep. page 336].) The other statement occurred also during a meeting between Plaintiff, Defendant Howells, and Defendant David, in which Plaintiff testified that Defendant David stated that, "if nothing gets resolved, we're going to arbitration. We're going to take the case to arbitration." (Dkt. No. 122, Attach. 9, at 148-49 [dep. pages 392-93].) Plaintiff also testified that Defendant David had made statements at the mediation (which occurred before the above-referenced meetings), in which he stated "[i]f nothing gets resolved at the mediation, we're going to arbitration, we're taking this case to arbitration." (Dkt. No. 122, Attach. 9, at 149 [dep. pages 393].) Plaintiff later testified that Defendant David made

42

statements about going to arbitration twice, not "repeatedly" as he now asserts. (Dkt. No. 122, Attach. 9, at 158 [dep. page 430] ["Mr. David said twice we're going to go to arbitration, and he didn't live up to that."].)

The Court finds that, even if a reasonable factfinder could conclude that statements such as "if nothing happens/gets resolved, we're going to arbitration" and "we're going to take this case to arbitration," when taken in context, could have been reasonably interpreted by Plaintiff as a statement that Defendant Local 2300 would take the grievance to arbitration if a settlement agreement was not reached, such factual dispute would not, by itself, create a genuine dispute of material fact as to whether Defendant David's conduct was in bad faith. Rather, the pertinent question is whether Defendant David's utterance of those statements was made with an improper intent, purpose, or motive, such as to intentionally mislead Plaintiff into believing that the grievance was guaranteed to go to arbitration. However, Plaintiff has offered no admissible evidence to support the existence of such an improper motivation, whether a discriminatory motive based on Plaintiff's race or national origin (as already discussed above) or some other reason.

Nor has Plaintiff shown a causal connection between any "promise" of arbitration made by Defendant David and the harm alleged. *See Spellacy*, 156 F.3d at 126 (noting that establishing that the union's actions were arbitrary, discriminatory, or in bad faith "is only the first step toward proving a fair representation claim," because a plaintiff must also then "demonstrate a causal connection between the union's wrongful conduct and their injuries"). Although Plaintiff states in his affidavit that he "relied on that promise in evaluating TCAT's offers of settlement," he also states that he ultimately refused to sign the settlement agreements

43

on the advice of Defendant Howell and his counsel that the settlement offer was not fair. (Dkt. No. 122, Attach. 8, at ¶¶ 35-36 [Pl.'s Aff.].) Additionally, it is undisputed that Plaintiff was apprised of the Executive Board's decision not to take the grievance to arbitration *before* the settlement offer expired for the last time. *See*, *supra*, Part I.D. of this Decision and Order [noting the undisputed facts that Plaintiff was initially informed of the Executive Board's decision on July 18, 2017, that further extensions for responding to the settlement agreement were obtained by the union through July 26, 2017, and that, even after the settlement offer expired without response from Plaintiff, Defendant David convinced Defendant TCAT to reinstate the offer until August 17, 2017, at which time Plaintiff explicitly rejected the offer].) The "promise" to arbitrate therefore could not have played any part in Plaintiff's final decision to reject the settlement agreement given that his rejection occurred approximately a month after he had been informed that arbitration would not be happening. Nor is it apparent how the "promise" to arbitrate in any way impaired Plaintiff's ability to seek any remedy, including an internal appeal, given that no appeal could have been taken until the Executive Board made its decision not to seek arbitration (which would be the same point at which Plaintiff would have discovered that the "promise" to arbitrate was false). (*See* Dkt. No. 117, Attach. 19, at 48 [Article 33, Section 4(b) of the UAW Constitution] [stating that the applicable time limits for appeal "begin to run from the time the appellant first becomes aware, or reasonably should have become aware, of the alleged action or decision appealed"].)[24] Consequently, even if Plaintiff had created a genuine

---

[24] The Court notes that, even if the time limit to appeal under Article 33, Section 4(d) of the UAW Constitution had expired by the time Defendant David sent the e-mail on August 16, 2017 (a fact that has not been established), such fact would not reasonably allow an inference of bad faith. In particular, the Court notes that it is undisputed that (a) Defendant David attempted to send a letter to Plaintiff containing the same language about the UAW

dispute of fact about whether Defendant David's statements were made in bad faith, no reasonable fact finder could conclude that those statements were causally connected to any injury alleged by Plaintiff.

The only remaining issue is Plaintiff's assertion that Mr. Howells encouraged him to pursue his disagreement with Defendant Local 2300's decision not to take the grievance to arbitration by filing a grievance with the NLRB, and that such encouragement was intended to distract him from pursuing an internal appeal. (Dkt. No. 45, at ¶¶ 44, 121, 123, 145 [Pl.'s Am. Compl.].) Plaintiff goes so far as to allege in the Amended Complaint that "[Defendant] Howells repeatedly told [Plaintiff] that his ***only remedy*** in the event that the Union refused to pursue a grievance was to bring an action before the [NLRB]" and that "[Defendant] Howells undertook substantial efforts to convince [Plaintiff] to proceed in this manner." (Dkt. No. 45, at ¶ 121 [Pl.'s Am. Compl.] [emphasis in original].)[25] However, the evidence does not support this allegation.

Plaintiff's affidavit submitted in opposition to Defendants' motions for summary judgment states that Defendant Howells told Plaintiff "on repeated occasions" that, "if the Union did not pursue the grievance, I should take my case directly to the NLRB," and that "[Defendant]

---

Constitution on July 20, 2017, only three days after the Executive Board's decision and only two days after Plaintiff had been informed of that decision in a voicemail from Defendant David, and (b) Defendant David sent the relevant e-mail the day after Plaintiff expressed to Defendant David (or any member of the Local 2300) that he was not going to sign the settlement agreement. Defendant David's undisputed actions do not reasonably suggest that he attempted to hide the existence of the UAW Constitution from Plaintiff in an effort to leave Plaintiff without a remedy.

[25]     The Court notes that Plaintiff's Amended Complaint is not verified, and thus is not evidence for the purposes of a summary judgment motion. *See Patterson v. Cnty of Oneida, New York*, 375 F.3d 206, 219 (2d Cir. 2004) (noting that a verified pleading that makes allegations based on personal knowledge has the same effect as an affidavit and may be relied on to oppose summary judgment).

Howells told me that he had taken other cases where the Union failed to pursue a grievance to the NLRB and he strongly encouraged me to do so," without reference to an obligation to follow the internal appeal procedures. (Dkt. No. 122, Attach. 8, at ¶ 37 [Pl.'s Aff.].) At his deposition, Plaintiff's testimony about this issue consisted of stating that "[Defendant] Howells at some point said we can take these to the NLRB, proceed these to the NLRB, which I had no idea what the NLRB is or was," that he spoke with Defendant Howells about this issue "twice," and that he could not recall anything further about the subject or their discussions. (Dkt. No. 122, Attach. 9, at 159 [dep. page 436].) At his deposition, Defendant Howells testified that he told Plaintiff that filing a complaint with the NLRB "was an alternative should he not be happy with the outcome of the proceedings, that that was an opportunity to explore." (Dkt. No. 122, Attach. 2, at 54, 56 [Howells Dep.].) Even if there was a genuine dispute of fact as to what exactly Defendant Howells said to Plaintiff related to an NLRB action, there is no admissible evidence to support Plaintiff's allegation that Defendant Howells told Plaintiff that filing a suit with the NLRB was his only remedy in the face of the Executive Board's decision not to pursue the grievance, or that Defendant Howells otherwise presented the matter to Plaintiff in a manner that actively hid the internal appeal process from Plaintiff or actively discouraged him from exploring other options. In particular, Plaintiff has offered no evidence from which a reasonable factfinder could infer that Defendant Howells harbored an improper purpose or motive in any of his dealings with Plaintiff or that he otherwise was acting intentionally in a manner against Plaintiff's interests. The Court finds that, based on the current record, no reasonable factfinder could conclude that Defendant Howells' statements about filing an NLRB action without contemporaneously informing Plaintiff that the UAW Constitution provided for direct appeal of the grievance decision constituted

46

anything more than negligence, particularly given Defendant Howells' testimony that he believed that the time in which to pursue such an appeal had already passed by the time he had these discussions with Plaintiff; the fact that his belief appears to have been mistaken does not transform his mistake into bad faith.

For all of the above reasons, and considering the deference due to union decisions of this nature, the Court finds that no reasonable fact finder could conclude that the Union Defendants acted in a manner that violated their duty of fair representation to Plaintiff. The Court therefore grants the Union Defendants' motion for summary judgment on Plaintiff's First Claim.

### B. Whether Defendant TCAT Is Entitled to Summary Judgment on Plaintiff's Second Claim for Breach of the CBA

Because the Court has determined that Plaintiff has not shown that he can establish his claim for breach of the duty of fair representation against the Union Defendants, the Court need not consider the merits of Plaintiff's claim against Defendant TCAT for breach of the CBA. *DelCostello*, 462 U.S. at 165; *Pathania*, 563 F. App'x at 43; *see also Hill v. City of New York*, 136 F. Supp. 3d 304, 349 (E.D.N.Y. 2015) ("Because a union's breach of the duty of fair representation is a prerequisite to consideration of the merits of plaintiff's claims against an employer for breach of a CBA, courts presented with hybrid claims need not reach the question of whether the employer violated the CBA unless the union has acted arbitrarily, in bad faith, or discriminatorily."); *Castro v. 32BJ Union*, 800 F. Supp. 2d 586, 595 n.15 (S.D.N.Y. 2011) (finding that court did not need to reach the issue of whether the employer breached the CBA on a hybrid claim because plaintiff had not proven that the union breached its duty of fair representation); *accord, Carlisle v. United Parcel Serv., Inc.*, 15-CV-1376, 2017 WL 3738697, at

*45 n.180 (N.D.N.Y. Aug. 29, 2017) (Suddaby, C.J.).  The Court therefore grants Defendant

TCAT's cross-motion for summary judgment as to the Second Claim.

Additionally, as discussed above in Part I.B. of this Decision and Order, Plaintiff's

motion must necessarily be denied based on the Court's finding that Plaintiff has not shown that

he can establish his First Claim against the Union Defendants, and thus cannot succeed on his

hybrid claim.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for summary judgment (Dkt. No. 89) is **DENIED**;

and it is further

**ORDERED** that Defendant TCAT's cross-motion for summary judgment (Dkt. No. 115)

is **GRANTED**; and it is further

**ORDERED** that the Union Defendants' motion for summary judgment (Dkt. No. 117) is

**GRANTED**; and it is further

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 45) is **DISMISSED**.

Dated: December 16, 2019
        Syracuse, NY

Hon. Glenn T. Suddaby
Chief U.S. District Judge